**ESTATE OF Leo A. BUSCH, Deceased, Respondent,**

v.

**FERRELL-DUNCAN CLINIC, INC., Appellant.**

**No. 66696.**

Supreme Court of Missouri, En Banc.

Nov. 21, 1985.

Tom G. Pyle, Springfield, for appellant.

Leland C. Bussell, Springfield, for respondent.

BILLINGS, Judge.

Appeal by a creditor from the denial of its claim against a decedent's estate because it was barred by the nonclaim statute, § 473.360, RSMo 1978. The issue raised is whether a creditor may constitutionally be barred when the only notice given of the appointment of a personal representative for decedent's estate is publication notice in accordance with § 473.-033, RSMo 1978. We have jurisdiction because of the constitutional attack on the two statutes. Mo. Const. art. V, § 3. We affirm.

Plaintiff-creditor, Ferrell-Duncan Clinic, Inc., had provided medical services to Leo A. Busch prior to his death. Administration of Busch's estate was commenced in the probate court of Greene County and notice of letters of administration and notice to creditors was first published August 11, 1983. On July 30, 1984, plaintiff filed a claim against the estate but it was rejected as being barred by § 473.360.

Plaintiff contends that to bar its claim after it received only publication notice denies it due process of law. For the reasons that follow, we disagree.

Section 473.033, RSMo 1978 [1] sets out the form and procedure to follow in publishing notice. Section 473.360, RSMo 1978, the nonclaim statute, provides that all claims against the estate of a deceased person that are not filed within six months after the first published notice of letters of administration are barred forever. Plaintiff relies on *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and one of *Mullane's* most recent progeny, *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), in asserting its due process argument.[2]

---

1. Section 473.033 provides in part:
   The clerk, as soon as letters testamentary or of administration are issued, shall cause to be published in some newspaper a notice of the appointment of the personal representative, in which shall be included a notice to creditors of the decedent to file their claims in the court or be forever barred.

2. Plaintiff also cites *Continental Ins. Co. v. Moseley*, 683 P.2d 20 (Nev.1984), following remand from the Supreme Court, 463 U.S. 1202, 103 S.Ct. 3530, 77 L.Ed.2d 1383 (1983). The Nevada Supreme Court applied *Mullane*, and held that a known estate creditor's claim could not be barred by the running of a nonclaim statute unless "more than service by publication" was afforded the creditor. The Supreme Court's procedure—granting certiorari, vacating and remanding for further consideration in light of *Mennonite Bd. of Missions, supra*—does not conclusively indicate that the Supreme Court has held, or will hold, *Mullane* applicable in the circumstances of the remanded case. We are not persuaded by the Nevada court's holding after considering the *Mennonite* case.

In *Mullane*, the Supreme Court struck down a provision of a common trust fund statute that allowed notice publication as the sole means of informing known trust beneficiaries of an action that would settle their rights against the plaintiff trustee. The court held that the state court judgment was not binding on the beneficiaries whose addresses were known to the trustee of the common trust fund. As to those individuals, the judgment was obtained in violation of due process of law. In stating its definition of procedural due process of law, the court wrote:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278]; *Grannis v. Ordean*, 234 U.S. 385 [34 S.Ct. 779, 58 L.Ed. 1363]; *Priest v. Las Vegas*, 232 U.S. 604 [34 S.Ct. 443, 58 L.Ed. 751]; *Roller v. Holly*, 176 U.S. 398 [20 S.Ct. 410, 44 L.Ed. 520]. The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean, supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly, supra*, and *cf. Goodrich v. Ferris*, 214 U.S. 71 [29 S.Ct. 580, 53 L.Ed. 914].

*Mullane, supra*, 339 U.S. at 314, 70 S.Ct. at 657.

In the thirty-five years since it was decided, *Mullane* has been the controlling precedent in a number of United States Supreme Court cases. In *New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), the court held that a decree providing for transfer of property under bankruptcy could not destroy a creditor's lien without providing more than publication notice. In *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) and in *Walker v. Hutch-*

*inson City*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), the court held that a condemnation proceeding which was predicated upon notice by publication was violative of due process. In the recent case of *Mennonite Bd. of Missions, supra*, publication notice was held inadequate to inform an ascertainable mortgagee about a tax sale of the mortgaged property.

■ These cases make it clear that when the rights or interests of a person are sought to be affected by judicial or quasi-judicial decree, due process requires that the person be given notice reasonably calculated to inform that person of the pending proceeding and an opportunity to appear and object. However, we do not believe this doctrine requiring more notice than that afforded by publication should be applied to notice under nonclaim statutes. The function served by notice is different, as is the nature of the right being affected. In *Mullane*, and the cases following it, the person to be notified was, in effect, made an actual party to the litigation by the notice, and the judgment of the court operated directly on that person's property. Notice under a nonclaim statute does not make a creditor a party to the proceeding; it merely notifies him that he may become one if he wishes.

Other state courts have summarily dismissed the notion that *Mullane* is applicable in the context of notice to creditors in probate proceedings.[3] In two recent cases, state appellate courts have applied a more exhaustive analysis to deny application of *Mullane* to their nonclaim statutes. *See In re Estate of Fessler*, 100 Wis.2d 437, 302 N.W.2d 414 (1981); *Gano Farms, Inc. v. Estate of Kleweno*, 2 Kan.App.2d 506, 582 P.2d 742 (Kan.App.1978). The Washington Supreme Court, faced with the same due process contention stated:

> In support of its contention that [the nonclaim statute] does not accord due process of law in that it goes no further

---

**3.** *See Burnell Leasing Corp. v. Wilkins*, 11 Ariz. App. 165, 462 P.2d 858 (1969); *Baker National Bank v. Henderson*, 151 Mont. 526, 445 P.2d 574 (1968); *Chalaby v. Driskell*, 237 Or. 245, 390 P.2d 632 (1964); *New York Merchandise Co. v. Stout*, 43 Wash.2d 825, 264 P.2d 863 (1953).

than to require publication of notice to creditors in a newspaper, appellant cites *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. That case has no application to such a statute as [ours]. Its doctrine was applied to a case where property rights were being brought before a court for adjudication such as those of beneficiaries under trusts, and where the addresses of such beneficiaries were known to the trustee. The basis of the decision is that notice by publication alone is not sufficient to accord due process under such circumstances.

Appellant is the victim of its own fault and nonaction by its failure to comply with a mandatory statute of nonclaim for which the courts can give it no relief. (Emphasis ours).

*New York Merchandise Co. v. Stout*, 43 Wash.2d 825, 264 P.2d 863, 864 (1953).

We agree with this distinction and believe that the nonclaim statute, and its potential for barring a creditor's claim, does not constitute an adjudicatory proceeding. The due process requirements of *Mullane* are not applicable to these probate proceedings. Section 473.360 is a self-executing statute of limitations. *See Rabin v. Krogsdale*, 346 S.W.2d 58 (Mo.1961); *Clarke v. Organ*, 329 S.W.2d 670 (Mo. banc 1959). The bar created by operation of a statute of limitations operates independently of any adjudicatory process. It is a legislative expression of policy that prohibits litigants from raising claims after the expiration of a given period of time. The passage of time itself destroys the right and remedy of the potential claimant. *See In re Estate of Fessler, supra*, 302 N.W.2d at 420.

Here, plaintiff's claim was cut off by the operation of the statute of limitations, not by an action of a judicial body. A creditor's right may be cut off by a nonclaim statute without the creditor being notified the statute is about to run, just as in any other statute of limitations. Publication of letters of administration merely commences the running of the statute of limitations. *See Clarke, supra.* The Supreme Court itself has stated that specific notice is not necessary under a self-executing statute that establishes the circumstances in which a property interest will lapse through the inaction of its owner. *See Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). The due process clause does not require a defendant to notify a potential plaintiff that a statute of limitations is about to run. *Id.* at 535, 102 S.Ct. at 795.

We conclude that the due process clause does not require any more than publication notice to a creditor that a decedent's estate is being administered, and that the notice provisions of 473.360, RSMo 1978 and § 473.033, RSMo 1978 are constitutional.

The judgment is affirmed.

All concur.