(729 P.2d 464)
No. 58,802

In the Matter of the Estate of E.F. Madden, Deceased.

UNION PACIFIC RAILROAD COMPANY, *Claimant/Appellant*, v. ESTATE OF E.F. MADDEN, Deceased, *Appellee*.

Opinion filed December 11, 1986.

*Marvin E. Thompson,* of Thompson, Arthur & Davidson, of Russell, for the appellant.

*Caleb Boone* and *Thomas C. Boone,* of Law Offices of Thomas C. Boone, of Hays, for the appellee.

Before PARKS, P.J., BRAZIL, J., and DAVID S. KNUDSON, District Judge, assigned.

KNUDSON, J.: This is an appeal by a creditor from an order of the district court dismissing a claim filed against the decedent's estate. The trial court ruled the claim was barred under the nonclaim statute, K.S.A. 59-2239.

The decedent, E.F. Madden, maintained a grain elevator and other structures upon the Union Pacific Railroad's right-of-way under a written lease. The lease ended on June 30, 1984, and under its terms Madden was obligated to remove all structures within 30 days after termination. The lease further provided if Madden failed to remove the structures Union Pacific could do so within the next 90 days and obtain reimbursement from him for the cost.

Madden did not remove the structures. Union Pacific pro-

ceeded to do so at a cost of $18,400. The railroad entered into negotiations with Madden's attorneys to recover the cost of removal. The dates and material discussions between the parties may be summarized as follows:

(a) October 10, 1984. Madden's attorneys acknowledged receipt of information from Union Pacific naming the low bidder for removal.

(b) November 1, 1984. Union Pacific sent by certified mail its formal demand for reimbursement to E.F. Madden with a copy of the demand letter to Madden's attorneys. E.F. Madden, Jr., the elder Madden's son, signed the receipt "E.F. Madden."

(c) November 6, 1984. Madden's attorneys informed Union Pacific the railroad had breached the lease agreement. (The letter was nonspecific as to the breach but, subsequently, the allegation was made Union Pacific failed to give Madden credit for salvage.) The letter indicated a copy was sent to E.F. Madden.

(d) March 19, 1985. Union Pacific's attorney acknowledged to one of Madden's attorneys that Madden was entitled to credit for salvage. Union Pacific subsequently requested salvage values from their contractor so the claim could finally be resolved.

(e) May 29, 1985. Madden's attorney informed Union Pacific's attorney that E.F. Madden had died on October 25, 1984, that administration of decedent's estate had commenced November 8, 1984, and that notice to creditors was first published November 15, 1984.

(f) E.F. Madden, Jr. was appointed executor of his father's estate.

(g) June 3, 1985. Union Pacific filed its petition for allowance of demand. The decedent's estate filed its written defenses alleging the claim was not filed within six months from the first publication of notice to creditors as required under K.S.A. 59-2239 and the bar of the nonclaim statute cannot be waived. Based upon these defenses and the executor's motion to dismiss made at pretrial conference, the district court dismissed the claim.

Because the trial court's dismissal was entered as a matter of law without an evidentiary hearing, for purposes of review, all controverted facts and reasonable inferences will be construed in a light most favorable to the appellant's assertions. Thus, we assume the following facts to be true:

1. The executor, E.F. Madden, Jr., was made aware of the railroad's claim upon receipt of the demand letter dated November 1, 1984.

2. The decedent's attorneys also represent the executor.

3. Madden's attorneys were aware of the claim on or before October 10, 1984.

4. Neither the decedent's son nor Madden's attorneys informed Union Pacific of his death in spite of continuing negotiations.

5. The letter of November 6, 1984, by Madden's attorney to Union Pacific indicated a copy sent to E.F. Madden despite his earlier death.

6. Constructive notice of Madden's death was given by publication on November 15, 1984, pursuant to K.S.A. 59-2236.

7. The railroad did not have actual knowledge of Madden's death until May 29, 1985, and thereafter promptly filed its claim in the estate.

Two issues are raised: (1) Whether a known creditor may constitutionally be barred by the nonclaim statute, K.S.A. 59-2239, when the only notice given of the appointment of the decedent's personal representative is publication notice under K.S.A. 59-2236, and (2) whether the decedent's estate should be estopped from asserting the nonclaim statute against this creditor.

Our discussion begins with *Gano Farms, Inc. v. Estate of Kleweno*, 2 Kan. App. 2d 506, 582 P.2d 742, *rev. denied* 225 Kan. 844 (1978). This opinion considered whether a creditor may be constitutionally barred from making a claim against a decedent's estate when the only notice given of the appointment of a decedent's personal representative is publication notice in accordance with K.S.A. 59-2236. The court recognized that when a state proposes to take judicial action which will deprive a person of a property right, it must give that person notice which is reasonably calculated to reach the attention of the person whose property will be affected. For this reason publication notice is not sufficient when the person's whereabouts are known or reasonably ascertainable. Nevertheless, the court concluded the application of the nonclaim statute upon publication notice did not violate either the due process or the equal protection clauses. Union Pacific argues its case is factually distinguishable from

*Gano Farms* because both the executor and attorneys for Madden's estate knew of the railroad's claim and intentionally failed to give actual notice. Under these circumstances, the railroad urges due process and equal protection require actual notice to a known creditor before the nonclaim statute may be applied.

Our reading of *Gano Farms* and the authorities cited therein leads us to a contrary conclusion. The rationale of the earlier Kansas case was that the precedents requiring more than publication notice did not apply to the nonclaim bar because the function of notice and the nature of the right affected are different. Cases in which publication notice has been found constitutionally inadequate all involve judicial action which operates directly on a person's property. The person to be notified is effectively made a party to the court proceeding with the notice and some property interest is the specific subject of the court's judgment. See, *e.g., Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950) (publication notice inadequate to notify trust beneficiaries of action to settle their rights against trustee). By contrast, as aptly stated by Chief Judge Foth:

"The notice under the nonclaim statute, on the other hand, does not make a creditor a party to the proceeding, but merely notifies him that he may become one if he wishes. It does no more than put into operation a special statute of limitations. It is true that the creditor's claim will be barred if not presented before the statute runs, but that is true of any statute of limitations. No order is entered which specifically bars the claim unless, as here, the creditor seeks to enforce the claim after the statute has run." *Gano Farms*, 2 Kan. App. 2d at 508.

Because it is the passage of time rather than the judgment of a court which invokes the bar of K.S.A. 59-2239, there is no constitutional requirement that the operation of the nonclaim statute be preceded by more than publication notice. The knowledge and actions of the executor do not make the creditor a party to the probate matter nor do they convert the bar of the nonclaim statute from one which is invoked by the passage of time to one which results from action by the court. Therefore, even if there are factual distinctions between this case and *Gano Farms*, those distinctions do not provide this court with a basis upon which greater constitutional protection should be afforded a creditor. Known or unknown, a creditor is only entitled to the publication notice prescribed by K.S.A. 59-2236.

Union Pacific also asserts the holding in *Gano Farms* should

be reconsidered because of recent decisions by the United States Supreme Court. In *Continental Ins. Co. v. Moseley*, 98 Nev. 476, 653 P.2d 158 (1982), the administrator of the decedent's estate knew of the creditor's claim but provided only the publication notice required by the Nevada nonclaim statute. The Nevada Supreme Court held publication notice satisfied the *Mullane* definition of due process notice without discussing whether application of this standard was mandated. The United States Supreme Court granted certiorari and, without hearing, vacated the ruling, and remanded the case for further consideration in light of its holdings in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983). *Continental Ins. Co. v. Moseley*, 463 U.S. 1202, 77 L. Ed. 2d 1383, 103 S. Ct. 3530 (1983). Following remand, the Nevada Supreme Court reversed its earlier decision and held more than publication notice was necessary to comply with due process when a creditor is known to the estate administrator. *Continental Ins. Co. v. Sister Moseley*, 100 Nev. 337, 683 P.2d 20 (1984).

At first impression *Moseley* appears to support the appellant's argument, but in fact the decision provides no basis to depart from our holding in *Gano Farms*. The case cited by the United States Supreme Court, *Mennonite Board of Missions*, involved the right of a mortgagee to receive more than publication notice prior to foreclosure for nonpayment of taxes. The Supreme Court concluded a mortgagee has a substantial property interest significantly and adversely affected by a tax sale and notice by publication was unconstitutional. This decision was consistent with the Supreme Court's previous decisions we referred to in *Gano Farms*. In *Mennonite Board of Missions*, just as in *Mullane*, 339 U.S. at 314, the person to be noticed was, by the publication notice, made an actual party to the action and the judgment of the court operated directly on that person's property. We believe the Supreme Court's summary remand in *Moseley* was based upon the Nevada Supreme Court's assumption the nonclaim statute effected a deprivation of property which necessarily had to comply with the *Mullane* notice requirements. Since *Gano Farms* held no such compliance necessary, the Supreme Court's action does not impair the continued validity of its authority.

The Missouri Supreme Court in *Estate of Busch v. Ferrell-*

*Duncan Clinic,* 700 S.W.2d 86 (Mo. 1985), agreed with the holding in *Gano Farms* and held due process does not require more than publication notice to a known creditor that the decedent's estate is being administered. The opinion provides an excellent summary of applicable law and is especially pertinent because the creditor cited the remand of *Moseley* and the Missouri Supreme Court also found it to be unpersuasive authority.

We conclude the due process and equal protection clauses do not require more than publication notice to a known creditor that a decedent's estate is being administered. Thus, the nonclaim statute was constitutionally applied in this case.

Union Pacific further contends decedent's estate should be equitably estopped from asserting the bar of the nonclaim statute because the conduct of the estate's executor and his attorneys led it to believe Madden was alive. However, the nonclaim statute is a special statute of limitations enacted for the benefit of the heirs. In *In re Estate of Hill,* 162 Kan. 385, 176 P.2d 515 (1947), the court held as follows:

"An executor or administrator is without power to waive the statute of limitations or nonclaim of the above statute [G.S. 1935 59-2239 (1945 Supp.)], and if, in an attempt to prove such a demand, it develops it is barred, it is the duty of the court to disallow it." Syl. ¶ 7.

We recognize waiver is not synonymous with equitable estoppel, but if an estate's representative lacks the power to affirmatively waive the nonclaim statute, we do not see how a creditor could avoid the bar of the nonclaim statute by failing to file a timely claim and thereafter asserting reliance on representations by the executor or his attorneys as justification for that failure. It is the duty of the court to protect the heirs by disallowing claims filed outside the period of the special statute of limitations and equity would not be served by the application of estoppel to thwart this duty. We conclude the doctrine of equitable estoppel is inapplicable when a creditor fails to file a timely claim.

Affirmed.