No. 58,802

In the Matter of the Estate of E. F. Madden, Deceased.

UNION PACIFIC RAILROAD COMPANY, *Appellant* v. ESTATE OF E. F. MADDEN, DECEASED, *Appellee.*

(736 P.2d 940)

Opinion filed May 7, 1987.

*Marvin E. Thompson,* of Thompson, Arthur & Davidson, of Russell, argued the cause and was on the briefs for appellant.

*Caleb Boone,* of the Law Offices of Thomas C. Boone, of Hays, argued the cause, and *Thomas C. Boone,* was with him on the briefs for appellee.

The opinion of the court was delivered by

HOLMES, J.: Union Pacific Railroad Company (Union Pacific or appellant), a Utah corporation doing business in Kansas, appeals from an order dismissing its claim filed against the Estate of E. F. Madden, Deceased, in the District Court of Ellis County, Kansas. The Court of Appeals affirmed the decision of the district court (*In re Estate of Madden,* 11 Kan. App. 2d 540, 729 P.2d 464 [1986]), and Union Pacific filed a petition for review by this court which was granted.

Only one issue is asserted in the petition for review: Whether a known creditor may constitutionally be barred by the nonclaim statute, K.S.A. 59-2239, when the only notice given of the appointment of the decedent's personal representative is publication notice under K.S.A. 59-2236.

The trial court's dismissal was entered as a matter of law without an evidentiary hearing and for purposes of appeal the

facts will be construed in a light most favorable to the appellant's assertions. Those facts are fully set forth in the Court of Appeals opinion and need not be repeated in detail here but will be greatly summarized. E. F. Madden was the lessee of property on the appellant's right-of-way under a written lease which expired June 30, 1984. Madden had constructed improvements upon the property and failed to remove them when the lease terminated. Union Pacific had the structures removed at a cost of $18,400 and, as provided under the terms of the lease, sought reimbursement from Mr. Madden. On October 10, 1984, appellant contacted Madden's attorneys, Thomas C. Boone and Caleb Boone of Hays, regarding the low bid for removal. Caleb Boone indicated to Union Pacific that if Union Pacific removed the structures in accordance with the lease, Mr. Madden "would fulfill his obligation under the terms of the lease." On October 25, 1984, Madden died. On November 1, 1984, Union Pacific, by certified mail addressed to E. F. Madden, demanded reimbursement for the removal expense and Madden's son, E. F. Madden, Jr., signed the return receipt. On November 6, 1984, Thomas C. Boone wrote regarding "the Madden matter" alleging Union Pacific had breached the terms of the lease agreement, but he did not specify the nature of the alleged breach. The letter indicated a copy was sent to "Mr. E. F. Madden." On November 8, 1984, a petition for probate of the deceased's will was filed by an attorney other than the Boones and the first notice to creditors was published on November 15, 1984. On March 19, 1985, appellant acknowledged that Madden was entitled to credit for salvage, which was subsequently determined to be an amount of $1,000. On May 15, 1985, the period for making claims against the estate of E. F. Madden expired. On May 29, 1985, Thomas C. Boone informed appellant's attorney that E. F. Madden had died. On June 3, 1985, appellant filed its petition for allowance of demand against the Madden estate in the amount of $17,400 ($18,400 less $1,000 credit for salvage). The estate, through the Boones, asserted the defense that the claim was not filed within six months from the first publication of notice to creditors and was barred by K.S.A. 59-2239. The district court dismissed the claim. Additional facts will be set forth as they become necessary to the issue on appeal.

While estoppel was asserted before the Court of Appeals, the only issue raised by the petition for review is whether a known creditor may constitutionally be barred by the nonclaim statute when the only notice given of the appointment of a decedent's personal representative is publication notice under K.S.A. 59-2236. The nonclaim statute, K.S.A. 59-2239, as it existed at the pertinent times herein, provided in part:

"All demands, . . . against a decedent's estate, . . . not exhibited as required by this act within six (6) months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment . . . ."

The time limitation of the statute was amended by the 1985 legislature to four months (K.S.A. 1986 Supp. 59-2239), but the amendment does not affect the issue before this court.

Union Pacific relies on three cases to support its position that K.S.A. 59-2239 is unconstitutional because it does not provide for actual notice to known creditors. The first is *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), where the Supreme Court struck down a provision of a common trust fund statute which allowed for notice by publication to known beneficiaries of a common trust fund to inform them of an action that would settle any claims they had against the trustee. The Court stated its definition of procedural due process:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457; *Grannis v. Ordean*, 234 U.S. 385; *Priest v. Las Vegas*, 232 U.S. 604; *Roller v. Holly*, 176 U.S. 398. The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean, supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly, supra*, and cf. *Goodrich v. Ferris*, 214 U.S. 71." 339 U.S. at 314.

Because the adjudication before the court would deprive those known beneficiaries, whose addresses were also known, of substantial property rights (the right to sue the trustee for improper management of the fund would be terminated by the court decree), the notice by publication was held insufficient as not meeting the requirements of due process.

After *Mullane* was decided, several states were faced with the

issue of whether their probate nonclaim statutes, providing only for notice publication, were constitutional. First, in *Gano Farms, Inc. v. Estate of Kleweno*, 2 Kan. App. 2d 506, 582 P.2d 742, *rev. denied* 225 Kan. 844 (1978), the Kansas Court of Appeals was faced with a situation where the debtor died a resident of one county and notice to creditors was published in that county. The creditor, who had sold goods on credit to the debtor, was located in another county and did not learn of the debtor's death until after the nonclaim statutory time period had run. The creditor's claim, which was filed after the nonclaim statute period, was disallowed, and the creditor on appeal argued it was entitled to actual notice and the nonclaim statute was unconstitutional. The Court of Appeals ruled the nonclaim statute was constitutional and based its rationale on two factors. First, the court noted that the cases cited in *Mullane* holding actual notice was required involved notice in a proceeding that would affect a property right and the purpose of the notice was to, in effect, make the party allegedly notified a party to the proceeding. The Court of Appeals reasoned that the purpose of the notice under the nonclaim statute is not to make the creditor a party to the proceeding, but to inform the creditor that he may become a party if he wishes. The second factor upon which the court's opinion is based is that the nonclaim statute is merely a statute of limitations and it is the running of the time period, rather than any court order, which cuts off the creditor's claim. Other states have reached the same conclusion. See *In Matter of Estate of Fessler*, 100 Wis. 2d 437, 302 N.W.2d 414 (1981); *Baker Nat. Bank v. Henderson*, 151 Mont. 526, 445 P.2d 574 (1968); *Continental Coffee v. Est. of Clark*, 84 Nev. 208, 438 P.2d 818 (1968); *New York Merch. Co. v. Stout*, 43 Wash. 2d 825, 264 P.2d 863 (1953).

In *Estate of Fessler*, the Supreme Court of Wisconsin agreed with the rationale found in *Gano Farms*. The court concluded that *Mullane* did not control the issue of whether the due process clause required more than notice by publication under the state's nonclaim statute. The court stated:

"It is evident upon a reading of [the cases following *Mullane*] that the scope of the *Mullane* rule is limited to those rights or interests jeopardized by judicial or quasi-judicial actions or proceedings. It is therefore crucial to this review to determine whether or not [the creditor's] claim has been extinguished by adjudication or by some other means.

"[The creditor's] claim was extinguished by operation of sec. 859.01, Stats. This section requires that claims in probate be filed within a specified period of time, and if a claim is not filed it is barred forever. It is settled law in Wisconsin that this statute is essentially a statute of limitations. *Estate of Palmer*, 68 Wis. 2d 101, 107, 227 N.W.2d 680 (1975); *Estate of Lathers*, 215 Wis. 151, 251 N.W. 466 (1934).

"The bar created by operation of a statute of limitations is established independently of any adjudicatory process. It is legislative expression of policy that prohibits litigants from raising claims—whether or not they are meritorious—after the expiration of a given period of time.

. . . .

"We conclude that [the creditor's] probate claim was cut off by operation of a statute of limitation and not by action of a judicial body. Therefore, the *Mullane* rule has no application." 100 Wis. 2d at 447-48.

The second case relied on by Union Pacific is *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983), which involved the notice necessary under the state statute for sale of real property for failure to pay taxes. There, the statute provided for the owner of the property to receive notice of the tax foreclosure by certified mail, but no provision was made to notify a mortgagee of the property. The Mennonite Board of Missions held a mortgage upon the property being sold and learned of the sale only after the redemption period had run. The Board then challenged the validity of the foreclosure. The Court ruled the statute allowing for notice by publication was unconstitutional. The Court found the mortgagee had a legally protected property interest, which was a matter of public record, and the foreclosure proceeding would adversely affect that interest. The Court stated:

"Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. Cf. *Wiswall v. Sampson*, [55 U.S. (14 How.) 52, 67, 14 L. Ed. 322] (1853). When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*.

. . . .

". . . Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." 462 U.S. at 798-800.

The last in the trilogy of cases relied upon by Union Pacific is *Continental Ins. Co. v. Sister Moseley*, 100 Nev. 337, 683 P.2d 20 (1984) (*Moseley III*). There, Continental had filed a civil action against the debtor prior to her death. Continental received notice of the death on the last day for filing claims against the decedent's estate pursuant to the nonclaim statute. Continental filed its claim two days after the time period had run. When its claim was dismissed, Continental appealed and argued the notice by publication to creditors violated procedural due process. The first time the case was heard, *Continental Ins. Co. v. Moseley*, 98 Nev. 476, 653 P.2d 158 (1982) (*Moseley I*), the Nevada court ruled publication notice satisfied *Mullane* as notice by publication was reasonably and sufficiently calculated to provide actual notice to Continental. The court noted that Continental did in fact receive actual notice on the last day for filing claims. Notice by publication was viewed by the court as furthering the State's policy to "provide an expeditious and comparatively unencumbered means of accomplishing estate administration." 98 Nev. at 478. On appeal to the United States Supreme Court, the Court, in a memorandum opinion, which did not address the facts or merits of the action, vacated that decision and remanded the case for further consideration in light of *Mennonite Board of Missions v. Adams. Continental Insurance Company v. Moseley*, 463 U.S. 1202, 77 L. Ed. 2d 1383, 103 S. Ct. 3530 (1983) (*Moseley II*). On remand, the Nevada court noted the estate had actual knowledge of Continental's claim against the decedent and that Continental was listed in the petition for summary administration. Without mentioning or determining whether the creditor had a legally protected property interest or whether an adjudication was involved in the probate proceeding depriving the creditor of his property, the court ruled more than service by publication was required:

"The issue presented by this appeal, therefore, is whether the estate's complete reliance on supplying notice by publication in these circumstances complied with the requirements of due process.

"The guiding principle to be applied was expressed in *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950):

'An elementary and fundamental requirement of due process in any pro-

ceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . .'
339 U.S. at 314.

"In *Mennonite*, the Supreme Court applied this principle and found that mere constructive notice afforded inadequate due process to a readily ascertainable mortgage holder. Given the facts of this case and the holdings in *Mennonite* and *Mullane*, we conclude that more than service by publication was required in order to afford due process to appellant. We therefore reverse the orders of the district courts and remand these matters for further proceedings consistent with this opinion." *Moseley III*, 100 Nev. at 338.

Union Pacific argues that by vacating and remanding *Moseley I*, the United States Supreme Court has directly held that mere publication notice to a known creditor in probate proceedings does not comport with due process. Two states which have addressed the issue of whether their nonclaim statutes providing for publication are constitutional since the *Moseley* remand by the Supreme Court do not agree with Union Pacific's contention.

In *Estate of Busch v. Ferrell-Duncan Clinic*, 700 S.W.2d 86 (Mo. 1985), the creditor had provided medical services to Busch prior to his death. The creditor's claim against the estate was rejected as being barred by the nonclaim statute and on appeal, relying on *Mennonite Board of Missions v. Adams*, the creditor asserted the due process argument. After reviewing *Mullane* and subsequent cases, the court found those cases requiring more than publication notice involved facts where a person's rights or interests are sought to be affected by a judicial or quasi-judicial decree. The court agreed with *Gano Farms, Inc.*, 2 Kan. App. 2d 506, that the purpose of notice under the nonclaim statute is not to make a creditor a party to the proceeding, but to notify the creditor it may become a party if it wishes. The court also found the nonclaim statute to be a statute of limitations, and that it is the independent running of the statute that bars the creditor's claim, and not an adjudicatory proceeding.

The creditor in *Estate of Busch* also cited *Moseley III* in its argument to the court. In a footnote to the opinion, the court stated:

"Plaintiff also cites *Continental Ins. Co. v. Moseley*, 683 P.2d 20 (Nev. 1984), following remand from the Supreme Court, 463 U.S. 1202, 103 S. Ct. 3530, 77 L. Ed. 2d 1383 (1983). The Nevada Supreme Court applied *Mullane*, and held that a

known estate creditor's claim could not be barred by the running of a nonclaim statute unless 'more than service by publication' was afforded the creditor. The Supreme Court's procedure—granting certiorari, vacating and remanding for further consideration in light of *Mennonite Bd. of Missions, supra*—does not conclusively indicate that the Supreme Court has held, or will hold, *Mullane* applicable in the circumstances of the remanded case. We are not persuaded by the Nevada court's holding after considering the *Mennonite* case." 700 S.W.2d at 87 n.2.

The other state to have addressed the issue of whether its nonclaim statute is constitutional is Illinois in *Gibbs v. Estate of Dolan*, 146 Ill. App. 3d 203, 496 N.E.2d 1126 (1986). There, the claimants purchased a motorcoach in December 1983 from a dealership which was a sole proprietorship of Dolan. The motorcoach did not operate satisfactorily and the claimants repeatedly took it to the dealership for repairs. In March 1984, Dolan died and the claimants immediately learned of his death when they contacted the dealership about repairs to their motorcoach. Claimants, who were threatening legal action, continued to meet with the dealership's representatives in an effort to resolve the problems they were having with their motorcoach. Finally, in January 1985, the claimants filed a claim against the decedent's estate. The nonclaim statutory time period had expired on September 27, 1984, and the claim was disallowed. The claimants argued the nonclaim statute, "providing for notice by publication, denied them due process of law since it was not reasonably calculated to apprise them of the six-month claims limitation period where the estate knew their names and addresses and, in fact, did send notice of the claims period to at least one other claimant." 146 Ill. App. 3d at 206. The Illinois court made the same distinction as have other courts, stating:

"[The nonclaim statute] is not directly concerned with giving notice of an adjudication of rights, but rather, with giving notice of the limitations period for seeking an adjudication of rights. This situation should not, therefore, be viewed as necessarily subject to the *Mullane* and *Mennonite Board of Missions* due process requirements for notice of an adjudication, but instead is more closely analogous to requiring notice of a limitations period. Unlike the notice required prior to an adjudication, the Supreme Court has specifically stated that due process does not require potential defendants to notify potential plaintiffs of the impending expiration of a limitations period. *Texaco, Inc. v. Short* (1982), 454 U.S. 516, 536, 70 L. Ed. 2d 738, 755, 102 S. Ct. 781, 796.

"Claimants contend that they were deprived of property when they lost their

cause of action due to a failure to be notified of the impending expiration of the estate-claims period; that, however, is not the type of notice protected by *Mullane* and *Mennonite Board of Missions*. As is plainly evidenced by a reading of *Mullane* and *Mennonite Board of Missions* in conjunction with *Texaco, Inc. v. Short*, those cases concerned notice of a pending adjudication, not notice of the impending expiration of a limitations period." 146 Ill. App. 3d at 208-09.

In a scholarly and comprehensive article, one commentator has concluded the Kansas nonclaim statute is probably unconstitutional. Kuether, *Is Kansas Probate Non Claim Statute Unconstitutional?*, 54 K.B.A.J. 115 (1985).

"Although it is a very close question, it is my conclusion that the nonclaim statute most likely will be held to be unconstitutional as to *known or reasonably ascertainable creditors in estates undergoing administration*. The probate proceeding is too similar to a judicial accounting, as in *Mullane*, to justify the lack of actual notice to creditors who are reasonably ascertainable. Starting the running of the 'statute of limitations' with the first published notice to creditors in the probate proceeding creates a situation in which it is the initiation of a proceeding by petition and notice to creditors, which cuts off the creditors' rights without notice. It is not an independent statute of limitations. There does not appear to be any substantial counter-balancing reason for the failure to notify known creditors." 54 K.B.A.J. at 123. (Emphasis added.)

The basis of the author's conclusion that the statute is unconstitutional seems to be his determination that the filing of the petition with the court and the published notice to creditors starts a proceeding which will determine creditors' claims and is so similar to a judicial accounting, as in *Mullane*, that actual notice must be given to readily ascertainable creditors. With the possible exception of the Nevada Supreme Court in *Moseley III*, no court, however, has adopted this view. We also note the Nevada court did not elaborate on, or specifically address, the reasons for its finding that publication notice in that case was insufficient. The mere filing of a petition with the probate court to initiate probate proceedings and the related published notice to creditors only begin the running of the nonclaim statutory time period. Independent of any court action, the nonclaim statute, being a statute of limitations, cuts off the creditor's right to assert a claim against a decedent's estate. In *Texaco, Inc. v. Short*, 454 U.S. 516, 70 L. Ed. 2d 738, 102 S. Ct. 781 (1982), the United States Supreme Court ruled that specific notice is not necessary under a self-executing statute that establishes the circumstances in which a property interest will lapse through the

inaction of its owner; *i.e.*, the due process clause does not require a defendant to notify a potential plaintiff that a statute of limitations is about to run.

While we agree with Professor Kuether that the issue before the court "is a very close question," we disagree with his conclusion that the nonclaim statute is unconstitutional as to known or reasonably ascertainable creditors. It is universally recognized that in probate proceedings involving a decedent's estate some speedy finality of the proceedings must be reached for the benefit of all parties interested in the estate. In 3 Bartlett's Kansas Probate Law and Practice § 1316 (rev. ed. 1953), the author states the purpose of the nonclaim statute:

"An evident purpose of the statute is to protect the executor or administrator against stale claims and to enable him to close the estate and distribute the balance thereof without unnecessary delay. A primary purpose is the speedy settlement of the estates of deceased persons in the interest of creditors, heirs, legatees, and devisees, and to render certain the titles to real estate. A speedy administration of the estate is for the benefit of creditors, who have the priority of right; and, when their claims are satisfied, for the payment of legacies or distribution to the heirs. When beneficiaries or heirs succeed to the estate it should be to a title freed from the incumbrance of or liability to debts. In subservience to this purpose has been the uniform construction of these statutes, and especially of the statute of nonclaim. In the absence of this statute, a settlement of an executor or administrator and the payment of legacies or distributive shares would be attended with the peril of future litigation by creditors against the beneficiaries and distributees to subject their legacies or distributive shares to the payment of debts. In making distribution or paying legacies, the personal representative would act at his own hazard.".

Likewise, it has long been recognized that the nonclaim statute is a statute of limitations applicable to claims against a decedent's estate. *Union Nat'l Bank & Trust Co. v. Estate of Werning*, 233 Kan. 671, 665 P.2d 192 (1983), and cases cited therein. We agree with the Court of Appeals' reasoning in *Gano Farms*, and those cases which recognize the distinction between the application of a statute of limitations and a notice which actually makes the party notified by publication a party to the action and then affirmatively affects that person's property rights. To hold that a decedent's personal representative must give actual notice to all "known or reasonably ascertainable creditors" would be not only time-consuming but extremely difficult to administer. Professor Kuether, in his article, discusses at some length the

practical problems of such a requirement. Every claim, not actually filed within the time limits of the statute, would be open to subsequent litigation to determine whether the creditor was known or could have been reasonably ascertained and whether the creditor may or may not have had actual knowledge of the death of the debtor. Every such claim would become a trial to determine factual issues which could result in defeating the purpose of seeking a speedy resolution of a decedent's estate. We conclude that the nonclaim statute, now K.S.A. 1986 Supp. 59-2239, being a statute of limitations and not an adjudication of rights, is not unconstitutional as a violation of the due process rights of a known creditor.

The decision of the Court of Appeals and the judgment of the district court are affirmed.