**ESTATE OF G.R. RAINS, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.,
Defendants,**

v.

**Jay EWING, Third Party Defendant.**

**Civ. A. No. 87–1533–T.**

United States District Court,
D. Kansas.

May 3, 1988.

Michael J. Friesen, Garden City, Kan., for plaintiff.

M. Kathryn Webb, Morrison, Hecker, Curtis, Kuder & Parris, Wichita, Kan., Richard J. Rome, Hutchinson, Kan., for defendants and third party defendant.

## OPINION AND ORDER

THEIS, District Judge.

This matter comes before the court on cross motions for summary judgment by the Federal Deposit Insurance Corporation (FDIC) and the Estate of G.R. Rains (Estate) concerning FDIC's claim to payment under two notes executed by G.R. Rains. The court does not believe oral argument would be helpful and denies plaintiff's request for argument. D.Kan.Rule 206(d). After careful consideration of the briefs, the court is prepared to rule.

The original plaintiff, G.R. Rains (Rains), sued the Boulevard State Bank (BSB), Nickerson State Bank (NSB), Gary Dinges and Paganica, Inc. in 1985 for the defendants' alleged failure to repay money they owed Rains. Rains allegedly made the loans for the benefit of Paganica, a Reno County country club which no longer conducts business. BSB counterclaimed for the balance of two loans it made to Rains during the same time period.

BSB failed in early 1987 and the Kansas State Bank Commissioner appointed FDIC to act as Receiver. FDIC in its corporate capacity purchased the unacceptable assets of BSB, which included the two notes executed by Rains in 1984. On March 27, 1987, Rains died.

The Estate contends in its motion for summary judgment that no defendant properly *substituted* the Estate for Rains pursuant to K.S.A. 60–225(a)(1) within the four months allowed by K.S.A. 59–2239(1), and FDIC is therefore barred from asserting its counterclaim. FDIC asserts that the statutory revival requirements were met and it is entitled to summary judgment on the two unpaid notes.

The court finds the following facts undisputed.

1. Rains executed a note to BSB for $100,000 on June 29, 1984. The note required Rains to repay the entire amount on August 28, 1984, plus interest at two percent over the prime rate.

2. Rains and Jay Ewing executed a note to BSB for $150,000 on June 29, 1984. The note required Rains and Ewing to repay the entire amount on August 28, 1984, plus interest at two percent over the prime rate.

3. Neither Rains nor Ewing have made any payments on either note.

4. Gilbert R. Rains died on March 27, 1987.

5. NSB filed a motion on April 8, 1987, which stated in material part: "Plaintiff, G.R. Rains, died in March, 1987. WHEREFORE, this Defendant prays that this action be dismissed, or that the lawful successor/representative of G.R. Rains be substituted in this action."

6. Rains' wife instituted probate proceedings on April 15, 1987. The Estate published the first notice to creditors on April 23, 1987.

7. The Reno County District Court, by Judge William F. Lyle, Jr., pursuant to NSB's April 8 motion, dismissed this action on April 24, 1987.

8. Rains, who did not receive notice of the April 24 hearing, filed a motion to vacate Judge Lyle's April 24 order on April 28.

9. Pauline Rains, wife of G.R. Rains, became executor of his estate on May 18, 1987.

10. FDIC filed a motion to substitute itself for BSB on May 28, 1987. Judge Lyle granted this motion on June 3, 1987.

11. On July 1, 1987, Judge Lyle conducted a telephone conference with counsel for Rains, FDIC, BSB and third party defendant Jay Ewing to take up the motion to vacate. A record of the hearing was not made. Judge Lyle, by affidavit, gave this recollection of the proceeding:

> 7. During the hearing, arguments of counsel were heard on the matter of the death of plaintiff G.R. Rains. I found that defendant Nickerson State Bank's alternative Motion to Substitute the Estate of Gilbert R. Rains should be granted, and the Order of Dismissal was set aside.
>
> 8. Plaintiff's counsel did not object to the substitution of the estate as proper party plaintiff.
>
> 9. At the time of the hearing, I entered an Order that the Estate of Gilbert R. Rains be substituted as party plaintiff in the action. I instructed Michael J. Friesen [Rains' counsel] to draft the Order to reflect the substitution.

Friesen's understanding of the telephone conference does not materially differ from Judge Lyle's. Friesen remembers that "(c)ounsel offered to draft pleadings substituting the estate and the court accepted said offer by stating 'let's make that substitution.'"

The Estate's assertion that Friesen's affidavit controverts Judge Lyle's recollection that he entered an Order to substitute parties is not persuasive. Friesen's recollection of the colloquy between court and counsel reveals only a slight difference in language, not a difference in the court's decision to substitute parties. Moreover, Friesen's current assertions to the court are undercut by his admission on September 4, 1987, that "it was my understanding that I was to file such a motion [to substitute] after our telephone conference on July 1st,...."

13. FDIC's counsel wrote to counsel for all parties on July 8 and August 19, 1987. In both letters, FDIC reminded Friesen of the court's direction to him to draft the order of substitution.

14. On August 23, 1987, the four month statute of limitations imposed by K.S.A. 59–2239(1) expired.

15. On September 1, 1987, Friesen filed a motion to substitute the Estate and the state court set the motion for hearing on September 18, 1987. Friesen explained his purpose for filing the motion several days later in a letter to all counsel:

> Although it was my understanding that I was to file such a motion [to substitute] after our telephone conference on July 1st, a closer reading of Ms. Webb's Order reveals that the matter has already been addressed. Nevertheless, to keep the file clean, I am sending Judge Lyle the enclosed Order and requesting that the hearing on this motion (set for September 18th at 11:00 a.m.) be removed from the docket.

16. On September 1, 1987, FDIC removed this action to federal court.

17. The pretrial order, filed October 22, 1987, directed Friesen to file a motion and proposed order to substitute the proper party. Friesen submitted these pleadings on October 28, 1987.

18. On November 7, 1987, the Estate for the first time asserted the defense of a failure to properly substitute parties in the instant motion for summary judgment. Two days later, Friesen withdrew the proposed order to substitute in an attempt to clarify the Estate's litigation posture.

## I. REVIVAL OF A CLAIM AGAINST THE ESTATE

The party that wishes to maintain its claim against the estate of a deceased party must comply with several statutory steps. The litigant, like any other creditor of the estate, must make a demand against the estate. K.S.A. 59–2238(1). The de-

mand must be made "within four months after the date of the first published notice to creditors." K.S.A. 59–2239(1). The litigant makes the demand by reviving the cause of action. K.S.A. 58–2238(1). "Substitution of parties and revivor of actions are different names for the same thing. The revivor of an action is in fact the substitution of new parties who have the right, under the substantive law, to go ahead with the prosecution or defense of the claim." *Livingston v. Bias,* 7 Kan. App.2d 287, 289, 640 P.2d 362 (1982).

Substitution of parties is governed by the three prerequisites of K.S.A. 60–225(a)(1). The statute states:

> If a party dies and the claim is not thereby extinguished, the court shall on motion order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party or by any party (sic) and, together with the notice of the hearing, shall be served on the parties as provided in K.S.A. 60–205, and upon persons not parties in the manner provided for the service of a summons. Unless the motion for substitution is made within a reasonable time after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

K.S.A. 60–225(a)(1).

First, some party must file a suggestion of death. NSB's April 8 motion properly suggested the death of G.R. Rains. The second requirement is that a motion for substitution must be filed within a reasonable time after the suggestion of death. NSB's April 8th motion also moved for substitution of the proper party, the Estate, and fulfilled the timely filing requirement.

The last prerequisite of K.S.A. 60–225(a)(1) is that the moving party must serve a copy of the motion and a notice of the hearing to each party and the proposed substitute party. NSB's April 8th motion was properly served but Rains' counsel did not receive notice of the hearing. When the court reheard NSB's alternative motion to dismiss or substitute, the Estate's counsel received notice and appeared. He now complains that the service of the notice was improper because the attorney for the substitute party, the executor for the Estate, did not receive notice of the hearing. Dkt. no. 33 at 5–6.

The court cannot accept this argument for several reasons. First and foremost, the court finds that NSB and FDIC substantially complied with the service requirements of K.S.A. 60–225. The Kansas Code of Civil Procedure authorizes the use of the substantial compliance doctrine in reviewing the sufficiency of the service of process "if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected." K.S. A. 60–204.

The court finds that the Estate "was made aware" of the hearing because its attorney appeared at the hearing. Michael Friesen litigated the case on behalf of Rains, his stepfather, before his death and prior to July 1. Friesen attended the July 1 hearing and agreed to draft the pleading to memorialize the substitution order. After the July 1 Order which substituted the parties, he continued to litigate the case. Friesen acted like the attorney for the Estate at all relevant times. No other attorney appeared in the proceedings. Friesen's post-November proclamations that he is not the Estate's attorney are belied by his actions on the record.

Friesen now claims that he filed the instant summary judgment motion at the request of the "true" attorney for the Estate. Dkt. no. 33 at 6. This revelation in the midst of litigation leads the court to two conclusions; neither assist the Estate's claim. The first is that the Estate hired two attorneys: one to administer the estate and a second (Friesen) to prosecute a claim for the Estate. The second possibility is that Friesen acted as the agent for the "real" attorney from July 1, 1987 to the present. A sub-agent's action is binding on

the agent and the principal. Under either scenario, Friesen's attendance and active participation in the July 1 hearing and the subsequent litigation demonstrates that the Estate was aware of the proceedings in which it had an interest and was competently represented.

Additionally, the court views its holding on the service question consistent with the mandate of K.S.A. 60–102 to construe the Code of Civil Procedure "liberally ... to secure the just, speedy and inexpensive determination of every action or proceeding." The Kansas Supreme Court declared that if a valid controversy exists on whether statutory criteria are met, the court must construe the statute liberally to "assure justice in every proceeding." *State v. Griffin*, 241 Kan. 68, 70, 734 P.2d 1089 (1987) (the court, based on K.S.A. 60–102, found a defect in the notice of appeal immaterial because it did not cause any surprise to the prosecution concerning the issues raised by the defendant on appeal); *accord Hughes v. Martin*, 240 Kan. 370, 375, 729 P.2d 1200 (1986) (a liberal construction of K.S.A. 60–203(b), extra time allowed to effectuate service if first service declared invalid, mandated by K.S.A. 60–102). A just and liberal construction of the service laws dictates that the court reject the Estate's claim it did not receive notice of the hearing on the motion.

The final hurdle in reviving an action is to accomplish the revival within four months of the first published notice to creditors. K.S.A. 59–2239(1); *Gatewood v. Bosch*, 2 Kan.App.2d 474, syl. 3, 581 P.2d 1198 (1978). In the instant case, revival of the action must have occurred by August 23, 1987.

The court finds that Judge Lyle's oral entry of an order to substitute on July 1 satisfied the statute. Judge Lyle had no discretion on whether to enter the motion to substitute. K.S.A. 60–225(a)(1) directs: "If a party dies and the claim is not thereby extinguished, the court *shall* on motion order substitution of the proper parties." (emphasis added). Rains does not contend that this is an action which does not survive his death; therefore, Judge Lyle prop-

erly entered the order to substitute the Estate. Judge Lyle was within his authority to orally grant the motion to substitute. "All other acts or proceedings, including the entry of a ruling or judgment, may be done or conducted by a judge or judge pro tem in chambers, without the attendance of the clerk or other court officials...." K.S. A. 60–104. The entry of the order to substitute the Estate was timely and proper.

Rains complains that an order of substitution was not filed within the four month time period allowed by K.S.A. 59–2239(1). The court concludes that any irregularity regarding this ministerial task is chargeable to Rains and does not negate the effect of the July 1 order by Judge Lyle. Rains is estopped from challenging the lack of a written order directing the substitution of the Estate. "A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, ... induced it to believe certain facts existed. It must also show it rightly relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Iola State Bank v. Biggs*, 233 Kan. 450, 458, 662 P.2d 563 (1984).

Both Friesen's representations at the July 1 hearing and in the September 4 letter to all counsel and Judge Lyle's recollection of the July 1 hearing make unambiguously clear Friesen's duty to memorialize Judge Lyle's order. NSB and FDIC could reasonably believe Friesen would carry out this perfunctory task from the Judge's directions and Friesen's representations. The prejudice FDIC faces if the Estate's view of the proceedings is granted is complete dismissal of the action. The court could not countenance Friesen's disregard of a court directive by dismissing this action.

This court is aware of Kansas courts' firm adherance to the strictures of K.S.A. 59–2239(1) and 60–225(a)(1). Although not cited by either party, the court recognizes the decision of *In re Estate of Madden*, 11 Kan.App.2d 540, 729 P.2d 464 (1986), *aff'd on other grounds*, 241 Kan. 414, 416, 736 P.2d 940 (1987). The *Madden* court held

the doctrine of equitable estoppel "inapplicable when a creditor fails to *file* a timely claim." *Id.* at 545, 729 P.2d 464 (emphasis added). *Madden* is not controlling here. NSB timely filed a motion to substitute and the court granted the motion within the four month statute of limitations. This court invokes the estoppel doctrine for the limited purpose of precluding an assertion by Rains of an untimely filing of a *written order* to substitute the proper party.

Judge Lyle ordered the Estate substituted and the parties continued to litigate the case under that assumption. Friesen's failure to file an order memorializing this course of events is much different than the failure to file a motion to substitute at all, as in *Madden.* In the *Madden* type situation, the estate is completely unaware of the claim against it during the relevant statute of limitations period because of the failure to file a motion to substitute. The Estate in this case was aware of the motion to substitute as early as April 8, 1987. The Estate's ability to defend this action was in no way prejudiced because it had timely notice of the defendants' desire to substitute. The *Madden* court's concern with the timely filing of motions under K.S.A. 59–2239(1) & 60–225(a)(1) is not abrogated by employing the estoppel doctrine to bar the Estate's complaint about the lack of a written order to memorialize the oral order of substitution entered by Judge Lyle on July 1, 1987.

## II. FDIC'S CLAIM TO THE RAINS' NOTES & 12 U.S.C. § 1823(e)

FDIC seeks summary judgment on the two notes Rains executed on June 29, 1984. The Estate defends Rains' nonpayment of the notes by asserting that BSB and Dinges fraudulently induced him to incur the obligations in order to bail out the nearly insolvent Paganica development. Complaint, ¶¶ 10–18. In his deposition testimony, Rains contended that an oral contract existed between BSB, Dinges and Rains: Dinges would make the payments on the notes Rains executed. Rains Depo. at 16, 21–2. While an allegation of fraud or of a separate oral contract may bar the claim for payment of the typical subsequent holder of a note, FDIC contends 12 U.S.C. § 1823(e) prevents the Estate from raising those defenses against it.

The statute states:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such *agreement* (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming a adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e) (emphasis added).

The Estate's central contention is that § 1823(e) covers agreements, not misrepresentations, that fraudulently induce someone to sign a note. *Gunter v. Hutcheson,* 674 F.2d 862, 867 (11th Cir. 1982); *see FDIC v. Galloway,* 613 F.Supp. 1392, 1403 (D.Kan.1985) (discussing guaranty agreements rather than notes). The court may have labored over the question presented a few months ago because of the conflict in law between the circuits and the scant factual support provided by the Estate on the fraudulent inducement claim. The issue, though, is now easily decided under *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), published more than a month before the Estate filed its memorandum of law, Dkt. no. 34.

The issue in *Langley* is identical to that faced by this court: "(W)hether, in an action brought by the FDIC in its corporate capacity for payment of a note, [12 U.S.C.] § 1823(e) bars the defense that the note was procured by fraud in the inducement even when the fraud did not take the form of an express promise." 108 S.Ct. at 400. An agreement within § 1823(e), the Court

decided, includes all promises and conditions that relate to the signing of a note. *Id.* at 401. The Court found that to give "agreement" the narrow construction proposed by the Estate would thwart the main purposes of the statute.

A narrower construction of agreement would prevent state banking authorities and FDIC from making a reliable evaluation of a bank's condition. A bank regulator could never know the terms of a note if side oral agreements were valid; a seemingly unqualified note could be subject to a hidden condition under the Estate's interpretation. *Id.* A second purpose of the statute thwarted by the Estate's construction is the importance of deliberate and informed decision making by a bank's officers prior to approval of a loan. The four statutory requirements are swept aside if an oral promise can validly modify a note. *Id.* The court held that a promise which may have fraudulently induced the execution of a note fell within § 1823(e). *Id.* at 402.

The Court also disposed of the Estate's subsidiary argument that FDIC's knowledge of the fraud prior to its acquisition of the notes precludes the application of § 1823(e). After recognizing the important role FDIC plays in insuring the solvency of the banking system, the Court concluded:

> The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew. It would be rewriting the statute to hold otherwise. Such a categorical recording scheme is of course not unusual.

*Id.* at 403.

In sum, the Court in *Langley* disposed of all arguments raised by the Estate and summary judgment is appropriate.

### III. FDIC'S CLAIM AGAINST JAY EWING

FDIC also asserts a claim against Jay Ewing for $150,000 based on the note Ewing and Rains executed on June 29, 1984.

Ewing is jointly liable for the entire amount because he signed the note. K.S. A. 84-3-401(1). Ewing has not responded to FDIC's motion for summary judgment, and the court views the motion as uncontested by Ewing. D.Kan.Rule 206(g). Moreover, Ewing and Rains stand in the same position; *Langley* disposes of any defense either could make. Summary judgment is also appropriate against Ewing.

IT IS BY THE COURT THEREFORE ORDERED that the motion of the Estate of G.R. Rains for summary judgment is denied. IT IS BY THE COURT FURTHER ORDERED that FDIC's motion for summary judgment on its counterclaim against the Estate and claim against Jay Ewing is granted.