# PRIEST *v.* TRUSTEES OF THE TOWN OF LAS VEGAS, NEW MEXICO.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 218.    Submitted January 28, 1914.—Decided March 9, 1914.

A judgment in a suit to quiet title to real property in New Mexico is not binding on a person or corporation or trustees having an interest in the premises who could be definitely located and served with process and who were not joined by name. The court did not acquire jurisdiction over them.

The statutes of New Mexico which, in 1894, permitted unknown claimants to be joined as defendants as such and to be served by publication, did not relate to parties who could be definitely located and joined or who were confirmees of the grant including the property under the act of June 21, 1860.

In affirming a judgment, an appellate court is not confined to the grounds on which the court below based the judgment.

The full faith and credit clause and statutes enacted thereunder do not apply to judgments rendered by a court having no jurisdiction

of the parties or subject-matter or of the *res* in proceedings *in rem.*
*Thompson* v. *Thompson*, 226 U. S. 551, distinguished.

A town in New Mexico and its inhabitants are substantial entities in
fact, and in this case have been recognized by Congress as having
rights to be authenticated by a patent. When a town is a patentee
it represents not only individual, but collective, interests. *Maese* v.
*Herman*, 183 U. S. 572.

Proceedings against some of the inhabitants of a town *held* in this case
not to bind the other inhabitants individually, or collectively as a
town, on the ground of privity.

16 New Mex. 692, affirmed.

THE facts, which involve the construction of statutes of
New Mexico in regard to serving process in real estate ac-
tion on unknown defendants and the effect of a judgment
based on service by publication, are stated in the opinion.

*Mr. John D. W. Veeder* for appellants.

*Mr. Charles A. Spiess* and *Mr. S. B. Davis, Jr.*, for
appellee.

MR. JUSTICE McKENNA delivered the opinion of the
court.

Action for mandamus brought by appellants in the
District Court of the county of San Miguel, then in the
Territory of New Mexico, against appellees as trustees of
the town of Las Vegas to require them to execute a deed or
deeds to the property described in the petition. The
appellees filed an answer to the petition and also a counter-
claim. Those papers set out the history of the Las Vegas
grant, preceding and subsequent to its confirmation by
the act of Congress hereinafter referred to and the final
patent to the town. Motions to strike them out were
overruled, and demurrers to them were also overruled.
An answer having been filed to the counter-claim by ap-
pellants, portions of which were struck out by the court

on motion of appellees, after hearing judgment was rendered dismissing the petition. The judgment was affirmed by the Supreme Court of the Territory.

The petition alleges appellants to be the owners in fee simple and holders of a perfect title to the land described therein and that it lies within the boundaries of "The Las Vegas Land Grant." That they acquired the title thereto between October 4, 1888, and July 1, 1894, by purchase from the then owners and occupants of the several portions comprising the tract and obtained deeds of conveyance therefor and afterwards instituted proceedings in the District Court of San Miguel County against certain named persons "and all the unknown claimants of interests in the lands and premises" adverse to appellants, to quiet their title to the lands, and that on September 15, 1894, a decree was duly entered in the cause confirming and establishing in them an estate in fee simple, absolute, against any and all and every adverse claim of all persons whomsoever, and quieting and setting at rest the title to the land against appellees. A copy of the decree is attached to the petition.

The petition also alleges that the Las Vegas grant was confirmed by act of Congress on June 21, 1860, to the town of Las Vegas and became thereby segregated from the public domain and the property of the grantee and its privies.

That Jefferson Reynolds, Eugenio Romero, Charles Ilfeld, Elisha V. Long, Isidor V. Gallegos, Felix Esquibel and F. H. Pierce are the trustees of the town, duly appointed by the District Court of San Miguel County under and by virtue of an act of the Legislative Assembly of the Territory of New Mexico entitled "An Act to Provide for the Management of the Las Vegas Grant, and for other purposes," approved March 12, 1903, and that it was made the duty of the board of trustees to make, execute and deliver deeds of conveyance to all persons who held a

title to any lands of the grant, which became or was perfect or entitled them to the possession thereof at the time of the acquisition of New Mexico, under the treaty of Guadalupe Hidalgo, or at any time subsequent thereto.

That appellants made application to the board of trustees to execute and deliver a deed to them of the tract of land described, the title to which had become perfected by the decree hereinbefore specified, but the board declined to recognize the title of appellants and to issue the deed of conveyance asked for.

Mandamus, directed to the board, was prayed.

The ground of appellants' petition, therefore, is that) they possess a perfect title established by the suit and decree referred to which entitled them to a deed from the trustees under the act of the Legislative Assembly of March 12, 1903. Laws of New Mexico, 1903, 72. That act becomes a factor for consideration. By it the District Court of San Miguel County is vested with jurisdiction to manage, control and administer the land grant. In the exercise of such jurisdiction power is conferred to appoint a board of trustees from among the residents upon the grant. Provision is made for their organization, and the court is empowered to exercise the same control over their acts as courts of equity exercise over receivers. And it is provided that "this act shall not interfere with or prejudice any vested rights in and to any of the lands embraced within the boundaries of said Las Vegas Grant, or preclude a judicial examination or adjustment thereof, and it is hereby made the duty of said board of trustees to make, execute and deliver deeds of conveyance to any and all persons who hold a title to any such lands, which became or was perfect or entitled them to the possession thereof at the time of the acquisition of New Mexico, under the treaty of Guadalupe Hidalgo, or at any other time subsequent thereto." (§ 7.)

By § 9 the board has power, under the direction of the

court, to lease, sell or mortgage any part or parts of the grants, the proceeds to be used "for such purposes as said board and court may deem to be for the best interests of the community for the benefit of which said grant was made."

It will be seen, therefore, that the statute makes it the duty of the trustees, it may be under the direction of the court, to execute and deliver deeds of conveyance to any one having the kind of title described, that is, which had become or was perfect or entitled such person to land which he claimed at the time of the acquisition of New Mexico, under the treaty of Guadalupe Hidalgo, or at any other time subsequent thereto. Appellants rely upon such title, as we have seen, as established by the suit to quiet title and the decree rendered therein. A consideration of this suit and decree, therefore, becomes necessary.

The suit was brought in the District Court of San Miguel County, Territory of New Mexico, by appellants against certain named defendants and "all the unknown claimants of interests in the premises and lands" which were described. The complaint alleged that appellants were owners in fee simple and the occupants and possessors of the land, that it lay within the exterior boundaries of a grant of land made by the Mexican Government to certain named parties in the year 1835 "for the use and benefit of the inhabitants and settlers of the Town of Las Vegas"; that the grant was known in the archives of the Surveyor General of New Mexico as private land claim number 20 and, as such, on June 21, 1860, duly confirmed by act of Congress of the United States to the Town of Las Vegas, and thereby became segregated from the public domain. That the land described in the complaint as belonging to appellants was taken possession of by them and their grantors under and by virtue of the terms and provisions of the said Las Vegas grant, and the laws of the Territory of New Mexico applicable thereto, more than

ten years prior to the commencement of the suit, and that they and their grantors from whom they claim title and from whom they have deeds of conveyance have been in the actual, exclusive, open and uninterrupted adverse possession under claim of title and have therefore a good and indefeasible title in fee simple to the land and are entitled to occupy and hold possession thereof.

It was alleged that certain persons, naming them, made some claim adverse to the complainants in the suit (appellants here), but what the nature and extent of their claim was complainants were unable to state. And it was alleged that there were certain unknown successors of the Fairview Town Company who made some claim of interest in and title to the land, but the nature and extent of the claim was unknown.

Then the following was alleged: "That your orators are credibly informed and believe that certain unknown persons, designated in this bill as 'Unknown Claimants of interest in the premises adverse to your orators' also make some claim of interest and title in and to the said tract of land adverse to the estate of your orators, but what the nature and extent of the said claim of said unknown persons in and to the said tract of land is, is likewise to your orators unknown."

It was finally alleged that all of the claims and pretenses of the defendants in the suit, known and unknown, adverse to the estate of complainants were of no avail against their title and constituted a cloud upon it. It was prayed that the title of complainants be established against all of the defendants and that it be forever quieted and set at rest, and process was prayed.

An affidavit for publication of process was filed in which it was recited among other things "that the place of residence is unknown and the whereabouts cannot be discovered of any and all of the defendants designated as unknown claimants of interests in the premises and lands

described in the bill of complaint, who claim adversely to
the complainants, George E. Priest, Melvin W. Quick and
Charles M. Benjamin."

Publication was made. There was no appearance on
the part of any of the defendants, and the bill of com-
plaint was ordered to be taken as confessed; and it was
decreed that all of the defendants were brought before the
court by proper process and that the court had jurisdic-
tion of them, whether known or unknown, and jurisdiction
of the subject-matter of the suit; that the land lay within
the exterior boundaries of the Las Vegas grant, as de-
scribed, was confirmed by Congress as alleged, and that in
consequence of the grant and confirmation the land was
segregated from the public domain and became and was
the private property of the grantees and their privies.
That the complainants in the suit and their grantors from
whom they claimed and from whom they had deeds of
conveyance were in the adverse possession of the land as
alleged and that as a consequence thereof complainants
were entitled to the relief for which they prayed. And it
was decreed that the right, title and interest of com-
plainants was an estate in fee simple absolute and that
the same be established in them and that the defendants
be barred and estopped from having or claiming or assert-
ing any right, title, or interest whatsoever adverse to the
complainants or any of them and that their title to the
land, and each and every part thereof, be forever quieted
and set at rest.

It will be observed that the title set up by appellants in
the suit to quiet title and sustained by the decree depended
upon adverse possession—in other words, upon the
statute of limitations; and the trial court in the case at
bar considered that aspect of the case and decree only
and found that the statute did not begin to run until
after the passage of the act of 1903 and the appointment
of the board of trustees and that possession of appellants

and their predecessors in title for a period of ten years prior to the act and the appointment of the trustees could not ripen any title against appellees.

The court, therefore, adjudged that the decree in favor of appellants of September 15, 1894, quieting title in them was not binding upon appellees and the petition herein was dismissed.

The Supreme Court, however, considered this position untenable, saying that if "the court had jurisdiction, as against defendants, to render the decree of 1894, all the findings upon which that decree proceeds are likewise conclusive against it and it avails nothing to inquire, as did the trial court, into whether such findings were as a matter of fact properly made," p. 694. And the court said, "The whole question, therefore, is whether the proceedings of 1894 bind the present defendants," the board of trustees of the town of Las Vegas.

The court answered the question in the negative, basing the answer on the provisions of the laws of the Territory. Sections 4010 and 4011 of the Compiled Laws of 1897 [1] of the Territory, the court said, provide for an action to quiet title to real property and permit the complainant to make parties, "by their names as near as the same can be ascertained," those who claim an interest adverse to him, the unknown heirs of any deceased person who made claim in his lifetime "and all unknown persons who may claim any interest or title adverse to plaintiff,  . . .  unknown heirs by the style of unknown heirs of such deceased person, and said unknown person who may claim an interest or title adverse to plaintiff by the name and style of unknown claimants of interests in the premises adverse to the plaintiff, and service of process on, and notice of said suit against, defendants, shall be made in the same manner as now provided by law in other civil

---

[1] Identic reënactment of §§ 1, 2, c. 6, act of April 2, 1884.

suits," p. 695. Service by publication, the court said, is provided by § 2964 [1] and may be ordered upon a sworn pleading or affidavit "showing that the defendant, or any one or more of them in said cause, resides, or has gone out of the Territory, has concealed himself within it, has avoided service of process on him, or is in any other manner so situated that process cannot be served upon him or them, or that his or their names, or place of residence, is unknown, or that his or their whereabouts cannot be discovered," p. 696.

The provisions of these sections, appellants contended, were pursued by them in their suit to quiet title, and, after citing them, as we have said, and the allegations of the bill of complaint therein, the court considered the effect of the decree therein upon the board of trustees of the town of Las Vegas, appellees herein, and said, "The Board was not *eo nomine* a party, nor, indeed, was it in existence in 1894. Any effect of the decree upon it must, therefore, result from its holding under some party to the cause. That it does not hold under any of the individuals named is conceded. That it is not affected by the futile provision of the decree quieting title against 'any person whatsoever' is evident. The only remaining alternative is that it is bound because of the fact that 'all the unknown claimants of interests in the premises adverse to complainants,' are named in the complaint, were cited in the publication and were decreed against in the court's disposition of the case and that this was a binding adjudication against defendant under Compiled Laws, 4011, above quoted. But, in 1894, were the owners of the Las Vegas grant, whom defendant now represents, unknown owners? The complainants certainly knew the exact status of the matter, for their complaint, as we have seen, in terms alleged that the premises were a part of the Las Vegas grant 'on June 21, 1860, duly confirmed by Act of Congress of the United States to the Town of Las Vegas.'"

---

[1] Based on § 1, c. 16, act of January 2, 1879.

"The complainants thus knew that the Town of Las Vegas was the confirmee of the grant and that if complainants' title had, by adverse possession, been wrested from any one it was from such confirmee. Knowing this, we are of the opinion that it was their duty to have made the Town of Las Vegas a party, and that the term 'unknown owners' could not be utilized to divest title from what the Act of Congress, no less than plaintiffs' conceded knowledge, told them was the true ownership of the property," p. 697. The court commented upon the abuse which may be made of statutes providing for constructive service and the necessity to so construe them as "to hold that where the real owner may be brought into court by name his property may not be taken by an advertisement against unknown owners" and that where, "as in this case, the locus of the title is definitely declared of record and such is confessedly known to the complainant, it is but an exaction of good faith that the holder of such title should be summoned by name in order that he may appear and defend. To exact less is to open the doors wide to insidious attacks upon property rights, and, indeed, to ignore the statute, which in terms provides, (Comp. Laws, § 4011) that persons claiming interests 'may be made parties defendant by their names, as near as the same can be ascertained,'" p. 698.

To the contention that the designation of ownership of the Las Vegas grant as "unknown claimants" was justified because the Town of Las Vegas, as used in the act of confirmation, was a mere aggregation of people without corporate organization, and that the suit became one practically against the individuals residing on the grant and that as to these the designation of unknown owners was necessary and proper, the court said it was not impressed, nor by the other contention that there was no officer upon whom process could have been served, and replied to the first contention, as it said it was replied in

*Maese* v. *Herman*, 183 U. S. 572, that 'the town and its inhabitants were certainly substantial entities in fact and were recognized by Congress as having rights and directed such rights to be authenticated by a patent of the United States.' To the second contention the obvious answer was that under § 2964, *supra*, then in force, service by publication could have been made, "since in that event the defendant 'was so situated that process could not otherwise be served upon it,'" p. 699.

We have quoted thus at length from the opinion of the Supreme Court because necessarily the contention of appellants that the town was properly impleaded and properly served under the designation of "unknown claimants of interests" depends upon the local statutes, to the construction of which by the Supreme Court we have repeatedly decided we defer. In this case the deference is the more justified, if indeed it is not compelled, by the subsequent construction of the statutes in the same way by the Supreme Court of the State in *Rodriguez* v. *La Cueva Ranch Co.*, 134 Pac. Rep. 228, in which case § 3181 of the Compiled Laws of New Mexico was considered. By that section it is provided that in suits for partition all persons interested in the premises "whose names are unknown, may be made parties to such partition by the name and description of unknown owners or proprietors of the premises, or as unknown heirs of any person who may have been interested in the same." Persons who were in actual possession had not been made parties by name, and the question was whether they were made parties under the designation of "unknown owners." The question was determined in the negative, the court holding "that it was not the intention of the Legislature to provide for the making of parties by the name of unknown owners, and for the service of process upon them by publication, when they in fact were in the open and notorious adverse possession of a part of the

premises," p. 230. The court further said that the complainants in the suit had the means and it was their duty to ascertain the names of all persons actually holding adverse possession, and that it was not the intention of the legislature to allow the rights of claimants to land in such circumstances "to be foreclosed of their rights by a proceeding in which they are not named, and in which the only service obtained upon them was by publication," p. 230. The court cited the decision in the case at bar in support of its conclusion, saying, after noting certain differences which strengthened that decision, "In principle we can see no difference between the two cases. In that case the court was construing the statutes of the Territory in regard to proceedings to quiet title, which are in substance and effect the same as the partition statute in regard to proceedings against unknown owners, and held that such statutes must be strictly construed, and that the decree in that case was unavailing as against the town of Las Vegas," p. 230. Other cases were cited, among them being *American Land Co.* v. *Zeiss*, 219 U. S. 47. It is not necessary to review them as the construction of the court of the local statute is that it requires the parties defendant in an action to quiet title to be designated "by their names, as near as they can be ascertained" and permits parties defendant to be designated as "unknown claimants" only when their names cannot be ascertained. In other words, requires them to be unknown in fact, not merely in designation. Any other conclusion would make the statute not a facility for removing clouds from titles but for putting clouds upon them, and the accommodation of the law of its process to an exceptional condition could be perverted, and rights divested by a semblance of notice of adverse claims to them.

It is contended, however, that the distinction which the Supreme Court of the Territory made between the findings of the trial court in the proceedings of 1894, as to

jurisdiction, and findings as to other matters in issue is without foundation, and that "the question of the jurisdiction of the defendants through service by publication having been adjudicated in the decree of 1894" is conclusive "and not subject to attack in this collateral proceeding, whether as a matter of fact it was in issue or not." To sustain the contention *Thompson* v. *Thompson*, 226 U. S. 551, is cited. The case was concerned with the faith and credit to be given to a decree of divorce rendered upon service by publication. The publication was attacked because based on an affidavit made on information and belief, and it was hence contended that the court had not acquired jurisdiction. The contention was held untenable, the court saying that if the affidavit could be regarded as defective it was not in the omission to state a material fact but in the degree of proof, and that therefore the resulting judgment could not be said to be void on its face. The principle was declared, however, to be established that the full faith and credit clause and the statute enacted thereunder do not apply to judgments rendered by a court having no jurisdiction of the parties or subject-matter, or of the *res* in proceedings *in rem*.

The case at bar is, therefore, clearly distinct from that case. The Town of Las Vegas at the time of the institution of the suit to quiet title and of the publication of process was, whether regarded as an entity separate from its inhabitants or collectively as composed of them, either not intended to be made a party under the designation "unknown claimants of interest" or the designation was untrue.

But it is further contended that service by publication was not an issue in this case, the pleadings and the decision of the trial court being based upon the view "that the status of the town was such that no rights by limitation could be adjudicated against it, because of the impossibility of serving it with *legal process;*" and that the Supreme Court having found against appellants on that

contention there was nothing left but to reverse the judgment of the trial court and remand the cause with instructions to grant the writ prayed for. The Supreme Court could not, it was further contended, go outside of the record and of its own motion raise the issue as to the sufficiency of the service upon the defendants, that issue being in express language excluded by appellees from the court's consideration. The answer is immediate. We know of no rule which precludes an appellate court deciding a case for other reasons than those expressed by the trial court, and the contention that the sufficiency of the service was withdrawn from the consideration of the court by appellees is not justified. It is based upon the averment of the town that neither at the time of the confirmation of the grant nor at any time subsequent thereto did it have a representative upon whom legal process could have been served, until the ninth of December, 1902, when the board of trustees was appointed.

The Supreme Court dealt with the fact, and, as we have seen, ascribed a different effect to it than that ascribed by the trial court. The Supreme Court said, there being no officer of the town upon whom process could have been served, service by publication could have been made "since in that event the defendant 'was so situated that process could not otherwise be served upon it.'" But the court was of the view, as we have seen, that such fact did not authorize the town to be made defendant under the name of "unknown claimants" or cited as such by publication, and the town having been so named, the decree of 1894 was not binding upon it.

The next contention of appellants is that the inhabitants of the town and appellees are privies in estate and are bound by the decree quieting title. In other words, that there was such identity of interest between the defendants in the suit to quiet title and the present appellees, the board of trustees, that the latter is bound by the decree.

The argument is that the town was the mere representative of the inhabitants and that the non-appointment of some one to represent it "cannot operate to suspend either the institution or prosecution of legal proceedings against the trust estate or to discharge either the trust estate or the beneficiaries from the effect of the judgment rendered, when the latter have been made parties and served with legal process." In other words, if we understand the contention, it is that the proceedings of 1894, being against some of the inhabitants of the town, bind all of the other inhabitants, considered as an entity or collectively. We need not pause to consider the soundness of the contention. If justified at all, it would seem to make unnecessary the present petition. It puts out of view besides the effect of the confirmation to the town. We said, in *Maese* v. *Herman, supra,* "The town and its inhabitants were certainly substantial entities in fact, and were recognized by Congress as having rights, and directed such rights to be authenticated by a patent of the United States." The town was the confirmee and represented, it may be, individual interests, but collective interests as well. It was because of the grant to the town that the act of March 12, 1903, *supra,* was enacted giving the District Court of San Miguel County "jurisdiction to manage, control and administer" the grant. It was in the execution of this jurisdiction that the appellees, trustees of the town, were appointed and given the power to make conveyances to individuals if they had the character of title described.

But the town also had rights, and, as we have seen, by § 9 of the act of March 12, 1903, the trustees were given power "to lease, sell or mortgage any part or parts of the grant." See as to rights which towns had under the Mexican law, *United States* v. *Pico,* 5 Wall. 536; *Townsend* v. *Greeley,* 5 Wall. 326; *United States* v. *Santa Fe,* 165 U. S. 675.

*Judgment affirmed.*