**In re Curtis Walter Robert HARRELL, a/k/a C.W.R. Harrell, Curtis Robert Harrell, Matthew Walter Harrell, and Harrell Plantation, L.L.C.**

**Nos. 03–1070–3F1, 03–1071–3F1, 03–1072–3F1, 03–3249–3F1.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 16, 2005.

Alan M. Weiss, for Regions Bank.

James H. Post, Smith, Hulsey & Busey, Jacksonville, FL, for Debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Motion to Allow Late Claim filed by Regions Bank and Motion for Order Authorizing Distribution of Remaining Sales Proceeds Pursuant to the Second Amended Joint Plan of Reorganization filed by Debtors. The Court conducted hearings on the matters on December 9, 2004, January 25, 2005, and January 26, 2005. Upon a review of the evidence, the arguments of the parties, and the applicable case law,

the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Regions Bank, Inc. ("Regions Bank") is an Alabama banking corporation which has operations throughout the Southeast United States. Regions Bank provides standard retail and commercial banking services to its customers at its branch locations.

Regions Funding is a division of Regions Bank. Regions Funding is engaged in the business of warehouse lending, i.e., providing financing to independent mortgage bankers and brokers for their subsequent origination of single family residential mortgage loans. In connection with its warehouse lending, Regions Funding receives as collateral an assignment of the residential loan made by the banker or broker and all rights to payment thereunder.

Although Regions Funding is not a separate entity from Regions Bank, it operates autonomously at a separate facility. Regions Bank and Regions Funding also maintain separate computer systems neither of which can be accessed by the other. Consequently, a search of Regions Bank's computer system would not reveal customers indebted to Regions Funding.

Paradigm Mortgage Associates, Inc. ("Paradigm") was a Florida corporation which conducted mortgage banking business in both Florida and Georgia. Curtis Robert Walter Harrell ("Harrell"), one of the debtors in these consolidated cases, was the president and chief executive officer of Paradigm.

On June 8, 1999 Regions Bank d/b/a Regions Funding[1] and Paradigm entered into Conforming Master Mortgage Warehouse Security Agreement (the "Warehouse Line") and a Master Promissory Note by which Regions Bank d/b/a Regions Funding agreed to provide warehouse financing to Paradigm. (Region's Ex. 1, 2). As of November 9, 1999 Paradigm was in default pursuant to the terms of the Warehouse Line and Master Promissory Note. (Region's Ex. 4). On November 30, 1999, Harrell, Joseph Stingone, and Paul Halter, Jr. ("Halter") executed Unconditional Guaranty of Payment and Performance (the "Guaranty") of all sums due and owing to Regions Bank d/b/a Regions Funding pursuant to the Warehouse Line and Master Promissory Note. (Region's Ex. 6).

In February, 2000 Regions Bank d/b/a Regions Funding filed suit against Paradigm, Harrell and Halter in the Superior Court of Fulton County, State of Georgia (the "Georgia Action") by which it sought to recover the amounts owed to it as a result of the defaults under the Warehouse Line, the Master Promissory Note and the Guaranty. (Region's Ex. 7).

On April 4, 2000, Regions Bank d/b/a Regions Funding, Regions Mortgage, Inc. ("Regions Mortgage") (collectively "Regions"), Paradigm, Harrell and Halter entered into a Settlement and Escrow Agreement wherein Harrell and Halter agreed to make certain payments to Regions. (Region's Ex. 8). On that same day Harrell and Halter executed an additional Unconditional Guaranty of Payment and Performance (the "Second Guaranty") with respect to the Settlement and Escrow Agreement. (Region's Ex. 10). Harrell, Halter and Paradigm defaulted under the terms of the Settlement and Escrow Agreement and the litigation resumed.

---

1. To the extent that the Court refers to various documents in these Findings of Fact and Conclusions of Law, the Court uses the version of Regions as it appears therein.

On May 15, 2002, Harrell, Halter, Paradigm, Regions Bank d/b/a Regions Funding, and Regions Mortgage entered into a Forbearance Agreement by which Harrell, Halter, and Paradigm consented to the entry of judgments against them. (Region's Ex. 13). Harrell, Halter, and Paradigm also agreed to turn over to Regions Bank and Regions Mortgage certain assets. In exchange, Regions Bank agreed to forbear taking any action with regard to the consent judgments against Harrell, Halter, and Paradigm until November 30, 2002 or sooner if certain triggering events occurred. The Forbearance Agreement provided that any notices "permitted or required to be given" thereunder be sent to Regions Bank, an Alabama banking corporation d/b/a Regions Funding 6520 Powers Ferry Road Suite 200 Atlanta, GA 30339 Attn: John McLarnon.

At some point Harrell assigned 250,000 shares of Lahaina/Accent Mortgage, a corporation not involved in the Georgia Action, to Regions Bank as payment toward the outstanding balance. On August 23, 2002 counsel for Regions Bank sent a letter to Harrell and Halter informing them that Regions Bank had entered into a settlement agreement with Lahaina/Accent Mortgage to purchase the stock for $200,000.00. (Debtor's Ex. 3).

On February 5, 2003 Harrell, along with two related debtors, filed Chapter 11 bankruptcy petitions.[2] Harrell listed Regions on his Schedule F as a disputed unsecured non-priority creditor with a claim of $0. Regions' address was listed as 6637 Roswell Rd. Atlanta, GA 30328. Harrell informed his counsel that Regions Bank was located in Atlanta but provided no further assistance in obtaining the address which was put on the schedules. Harrell's counsel stipulated that he and his legal assistant obtained the address from the internet and other sources.

On May 2, 2003 the Court entered Order Establishing Bar Date for Filing Proofs of Claim (the "Bar Date Notice"), setting June 17, 2003 as the deadline for creditors to file a proof of claim. Debtor's counsel filed a certificate of service with the Court indicating that on May 12, 2003 he served the Bar Date Notice on Regions at 6637 Roswell Rd. Atlanta Ga 30328.

On August 18, 2003 a consent judgment was entered in favor of Regions Bank d/b/a Regions Funding and Regions Mortgage against Halter and Harrell.

On September 9, 2003, at the request of the United States Trustee, Harrell amended his Schedule F to indicate that the amount owed to Regions was unknown and was a "[p]otential liability related to prior employment-Paradigm Mortgage."

Joann Hargraves ("Hargraves") is an affiliate operations officer for the twenty-four Atlanta branches of Regions Bank. Prior to October 2004 all of the legal documents sent to Regions Bank in Atlanta went to Hargraves for distribution. (Tr. at 8). Hargraves testified that if she received a pleading or legal document, she faxed it to the appropriate department (i.e. bankruptcy, repossession, foreclosure or subpoena) in Birmingham, Alabama, made a copy for the branch office where it was received, and sent the original to the appropriate department in Birmingham. Additionally, she conducted a search of the bank's records to determine whether the name on the pleading was a customer of Regions Bank. If she determined that it was, she provided a copy of the pleading to the account officer who opened the account if they still worked at the bank. Hargraves testified that copies of the plead-

---

**2.** On April 1, 2003 a third related debtor filed a Chapter 11 bankruptcy petition. The four cases were administratively consolidated on April 3, 2003.

ings and notices received at the Roswell Road branch were maintained for five years after their receipt, after which they were sent to storage.

Between February 6, 2003 and September 26, 2004, 33 notices and pleadings in Debtors' bankruptcy cases were served on Regions at the 6637 Roswell Road address. (Debtor's Ex. 1). None of the 33 notices and pleadings was returned as undeliverable. Upon a review of her files dating back to January, 2000, Hargraves discovered that between July 7, 2004 and July 13, 2004 she received Objection to Debtors' Second Addendum to Disclosure Statement filed by Industrial Tractor Company, Inc. and ITC Rents, Inc., Notice of Appearance on Behalf of Highland Tractor Co., and Objection to Debtors' Second Addendum to Disclosure Statement filed by Highland Tractor Co., all of which were mailed to the 6637 Roswell Road address. Upon receipt of the documents, Hargraves faxed them to the custodian of records in the Birmingham corporate office, made copies of the documents for the branch office's records, and mailed the originals to Birmingham. (Tr. at 19). Hargraves testified that she had no record of having received any notices or pleadings relating to Debtors' bankruptcy cases prior to July, 2004. Thomas Holland, the chief operating officer of Regions Funding since February, 1999, testified that he first became aware Harrell had filed bankruptcy in July, 2004 when his counsel called and told him. (Tr. at 60.)

On June 11, 2004 Debtors filed Second Amended Plan of Reorganization (the "Plan"). The Plan required Debtors to sell the bulk of their real property to generate sufficient funds to pay in full all claims known to them at that time. On August 19, 2004 the Court conducted a confirmation hearing on the Plan. Regions Bank did not file an objection to confirmation and did not appear at the confirmation hearing. At that hearing the Court found that the Plan met the requirements of 11 U.S.C. § 1129(a) with the exception of the interest rate to be paid to unsecured creditors. The Court also found the Plan was feasible but reserved jurisdiction to reconsider feasibility if there were any material changes in the terms or the timing of the proposed sale of the real property. On September 17, 2004 the Court entered an order memorializing its ruling. The order also continued the confirmation hearing to October 28, 2004. On October 25, 2004 Regions Bank filed Motion to Allow Late Claim [3] and an Objection to Confirmation. At the October 28, 2004 hearing the Court overruled Regions Bank's Objection to Confirmation. The Court scheduled a hearing on the Motion to Allow Late Claim for December 9, 2004 and ordered that the proceeds of the sale of the real property be held in escrow pending the outcome of the December 9, 2004 hearing.

Harrell testified that at the time of the bankruptcy filing, he thought Regions Bank was paid in full and that he understood that if Regions Bank could not dispose of the assets which were the subject of the Forebearance Agreement, it would contact him. Harrell also testified that if Regions Bank's claim is allowed, Debtors will be unable to pay their unsecured creditors in full and thus unable to repurchase their property.

### CONCLUSIONS OF LAW

Regions Bank argues that it was deprived of constitutional due process because the notice of the claims bar date was inadequate. Alternatively, Regions Bank argues that its failure to timely file a claim is the result of excusable neglect.

---

**3.** Regions Bank seeks to file a claim for approximately $437,000.00.

■ Regions Bank concedes that it received three pleadings in July, 2004 at the 6637 Roswell Road address but asserts that it has no record of receiving any notices or pleadings before that date. There is a rebuttable presumption that a properly mailed item is received by the addressee. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932). None of the 33 notices or pleadings in the case was returned as undeliverable. The Court finds that Regions Bank received all of the notices or pleadings which were mailed to 6637 Roswell Road.

■ Next, Regions Bank argues that the address to which the Bar Date Notice was sent was inadequate and therefore failed to comply with the requirement of due process. The Supreme Court long ago set the standard by which the adequacy of notice is measured for purposes of constitutional due process. In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) the Supreme Court held:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer,* 311 U.S. 457[, 61 S.Ct. 339, 85 L.Ed. 278 (1940)]; *Grannis v. Ordean,* 234 U.S. 385[, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)]; *Priest v. Las Vegas,* 232 U.S. 604[, 34 S.Ct. 443, 58 L.Ed. 751 (1914)]; *Roller v. Holly,* 176 U.S. 398[, 20 S.Ct. 410, 44 L.Ed. 520 (1900)]. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance. But when notice is a person's due, process which is a merely gesture is not due process. The

means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

"Whether a particular notice is reasonable depends on the particular circumstances." *Tulsa Professional Services, Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Under the *Mullane* standard the reasonableness and the constitutional validity of a chosen method of notice requires that the method be reasonably certain to inform those affected, but does not require the very best method of service of process. *Riverchase Apartments, L.P. v. Campbell County (In re Riverchase Apartments, L.P.),* 184 B.R. 35, 39 (Bankr.M.D.Tenn.1993). A creditor who challenges the accuracy of a listed address bears the burden of proving that the address used was so incorrect as to fall short of the threshold. *In re Kleather,* 208 B.R. 406, 410 (Bankr.S.D.Ohio 1997).

Regions Bank cites to *In re Faden,* 96 F.3d 792 (5th Cir.1996). In *Faden* the debtor had substantial business dealings with the creditor Insurance Company of North America ("INA") for several years before he filed his Chapter 7 petition. However, the debtor provided no information to his bankruptcy counsel as to INA's proper address. Although the agreement between the parties upon which INA sued and obtained a judgment contained a specific mailing address for all notices, the debtor's counsel's secretary obtained the address at which notices were sent to INA from the telephone book. INA did not become aware of the debtor's bankruptcy case until after the claims bar date had passed. INA sought to have the debt owed to it excepted from the debtor's discharge pursuant to § 523(a)(3). The court found that the debtor's testimony was "vague and not credible as to why he did

not make a good faith effort to provide a correct address for this creditor". The court found that the debtor's reliance on the address in the telephone book was not warranted in light of the fact that the address in the loan documents was more reliable and was readily available to him. The court held that the debt was non-dischargeable. The district court affirmed the bankruptcy court opinion. The Fifth Circuit affirmed noting that "[w]hile reliance on a telephone directory may be reasonable in some circumstances, it did not suffice here because appellants could have easily referenced their own files to find the requisite information. Although a bankrupt is not required to exhaust every possible avenue of information in ascertaining a creditor's address, he must exercise reasonable diligence in accurately scheduling his debts." *Id.* at 796.

■ The Court finds that the instant case is distinguishable from *Faden.* The creditor in *Faden* received no notice of the bankruptcy case at any address. In the instant case Regions received 33 notices, including the Bar Date Notice, at Regions Bank's Atlanta branch office. Harrell testified that when he filed his bankruptcy petition, the Regions Bank/Paradigm Mortgage documents were in storage and he did not have ready access to them. Additionally, Harrell testified that at the time he filed his bankruptcy petition he no longer considered the Forbearance Agreement to be of any import because he believed that the debt to Regions Bank had been satisfied. The Court observed Harrell's testimony and demeanor and finds him to be a forthcoming and credible witness. The Court finds that Harrell's reliance on his counsel to obtain an address for Regions Bank was reasonable and that the Bar Date Notice sent to Regions Bank

was reasonably calculated to apprise it of the claims bar date and therefore complied with the requirements of due process.

■ Having found that the Bar Date Notice to Regions Bank complied with the requirements of due process, the Court must determine whether Regions Bank's failure to timely file a claim constitutes excusable neglect. The determination is an equitable one, taking into account all relevant circumstances, including: (i) the danger of prejudice to the debtor, (ii) the length of the delay and its potential impact on the judicial proceedings, (iii) the reason for the delay, including whether it was in the reasonable control of the movant, and (iv) whether the movant acted in good faith. *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court turns first to the reason for the delay.

### Reason for the Delay

■ Regions Bank argues that its failure to timely file a claim was beyond its control because: 1) the debt was listed only on the records of Regions Funding and 2) Regions Bank and Regions Funding maintained two separate computer systems neither of which could be accessed by the other. However, a creditor's failure to appropriately internally distribute notices is not a circumstance beyond its reasonable control. *See In re the Drexel Burnham Lambert Group, Inc.,* 129 B.R. 22 (Bankr.S.D.N.Y.1991); *See also Riverchase,* 184 B.R. at 40 (debtor was not required to address notice to county judge; once notice was received by the county clerk, delivery to the appropriate person within the county system was the responsibility of the county clerk's office); *Roeder v. Internal Revenue Serv. (In re Benny's*

*Leasing, Inc.),* 187 B.R. 484, 486 (W.D.Pa. 1995) (the IRS is a sophisticated creditor which files many proofs of claim; the duty to forward the notice to the proper department was solely within the control of the IRS). The Court finds that Regions Bank's failure to transmit the Bar Date Notice to Regions Funding and its consequent failure to timely file a claim was wholly within its control.

### Length of Delay and Potential Impact on Judicial Proceedings

The Court turns to the issue of the length of the delay and its potential impact on the judicial proceedings. On June 11, 2004 Debtors filed the Plan which required them to sell the bulk of their real property to generate sufficient funds to pay in full all claims known to them at that time. The Plan was confirmed and the property sold pursuant thereto. The allowance of an additional approximately $437,000.00 claim at this juncture would jeopardize Debtors' ability to pay 100% of the timely filed and allowed claims. The Court finds that this circumstance weighs against a finding of excusable neglect. *See Intelligent Medical Imaging, Inc.,* 262 B.R. 142 (Bankr.S.D.Fla.2001) (finding that allowing a late filed claim after confirmation of plan would adversely affect the administration of the case because it would alter the distribution to creditors who had participated in the plan and undermine the stability of the confirmation process). Moreover, even though Regions Bank was aware of Harrell's bankruptcy no later than July, 2004, it took no action until October 25, 2004. The Court finds that Regions Bank's failure to participate in the case during this critical 90 day period was tantamount to a decision not to participate and that such failure militates against a finding of excusable neglect.

### Danger of Prejudice to Debtors

Harrell testified that if Regions Bank's claim is allowed, Debtors will be unable to pay their unsecured creditors in full and thus unable to repurchase their property. Debtors assert that they may have proposed a different Chapter 11 plan or negotiated a sale on different terms or with a different buyer. The Court finds that allowing Regions Bank to file a claim at this stage of the proceedings would significantly prejudice Debtors.

### Good Faith

Regions Bank waited approximately ninety days after it became aware of the case to present its claim. The Court finds that such a delay does not demonstrate good faith.

### CONCLUSION

The notice of the claims bar date which was served upon Regions Bank was adequate and complied with the requirement of due process. Regions Bank's failure to timely file a proof of claim is not the result of excusable neglect. The Court will enter a separate order denying Region Bank's Motion to Allow Late Claim and a separate order granting Debtors' Motion for Order Authorizing Distribution of Remaining Sales Proceeds Pursuant to the Second Amended Joint Plan of Reorganization.