DECISION
Introduction
Heard before Associate Justice Green-deer-Lee, Associate Justice Funmaker,[1] and Chief Justice Mary Jo Hunter, presiding. This case comes before the Ho-Chunk Nation Supreme Court on appeal of the Trial Court’s Order (Final .Judgment in CV 10-12, dated April 11, 2011), upholding the GRB’s decision in favor of Respondents. It is the conclusion of the HCN Supreme Court that the Trial Court properly upheld the GRB’s decision and that Appellant’s suspension was appropriate.
Standard of Review
This Court reviews Trial Court decisions under an “abuse of discretion” standard. The Supreme Court “will uphold the Trial Court’s findings ‘absent a showing that the Trial Court somehow failed to make a necessary finding, ignored the great weight of the evidence, or otherwise abused it’s (sic) discretion in making *422 findings of fact.’ ” Sharon Williams v. HCN Insurance Review Commission, SU 08-01 (HCN S.Ct., Oct. 29, 2008) at 7. However, “This Court reviews questions of law and constitutional interpretations de novo.” Gale White v. Jean Ann Day, SU 08-02 (HCN S.Ct., Aug. 4, 2008) at p. 8. (citing Robert A. Mudd v. Ho-Chunk Nation Legislature, SU 03-02 (HCN S.Ct., April 8, 2003)); Louella Kelty v. Jonette Pettibone, SU 99-02 (HCN S. Ct, Sept. 24, 1999).
Statement of Facts
The petitioner, Kyle M. Funmaker, worked at the Ho-Chunk Nation Department of Treasury (hereinafter DOT) as a Bookkeeping Supervisor from October 10, 2007. Funmaker v. Dept. of Treasury, CV 10-12 (HCN TV. T., April 11, 2011) at 8. Respondent Katherine Young works at the DOT as the Treasurer and Lori Meinking as a Supervisor. Admin. Record, p. 35. This case concerns Petitioner’s failure to complete a task assigned to her and her subsequent suspension.
On January 15, 2008, Petitioner Fun-maker received a Performance Review that found she needed improvement in her quality of work, quantity of work, planning and organization, problem solving initiative, and communication. Funmaker v. Dept. of Treasury, CV 09-17 (GRB Jan., 27, 2010) at 2. Petitioner also received a Performance Improvement Plan (hereinafter PIP) that outlined expectations for her improvement. Id. She did not, however, sign the PIP to indicate that she would follow the outlined improvements and instead attached a two-page response objecting to the expectations. Admin. Record, p. 29.
On October 27, 2008, Supervisor Meink-ing asked Ms. Funmaker to issue a check to reimburse a tribal member for money that was being withdrawn from her bank account by mistake. Admin. Record, p. 36. Supervisor Meinking also asked Ms. Funmaker to issue a check for the tribal member’s bank service charges that resulted from the withdrawal. The checks totaled $110. Id. Supervisor Meinking offered to assist Ms. Funmaker if she needed help, but Ms. Funmaker instead chose to seek help from an accountant at the DOT. Id. The tribal member returned to Ms. Funmaker’s office on several occasions, only to find each time that the cheek was not completed. Eventually, Respondent Meinking took over the responsibility and wrote the check herself. Id.
Respondents held a Pre-Deprivation hearing with Ms. Funmaker on October 31, 2008, to discuss why she did not complete her assigned task. Ms. Funmaker replied that she “got busy.” Admin. Record,, jig. 38. The Accounts Payable Division of the DOT then decided to suspend Ms. Fun-maker for three days for violating ERA 30(e)(4) (“... failure to carry out a direct order from a superior ... ”), 30(e)(18) (“Inefficiency, incompetency, or negligence in the performance of duties, including failure to perform assigned tasks or training, or failure to discharge duties in a prompt, competent, and reasonable manner”), and 30(e)(19) (“... inability to improve job performance in accordance with written or verbal direction after a reasonable trial period ... ”) Admin. Record, p. 35.
Petitioner Funmaker filed a grievance with the Department of Personnel (hereinafter DOP) on November 10, 2008, protesting her suspension. Admin. Record, p. 20. She argued that she did not receive due process prior to her suspension, she did not have the proper training for the assigned task, and the discipline was not progressive. Admin. Record, p. 22-23. Ms. Funmaker sought reassignment to a comparable position, removal of her sus *423 pension from her record, and compensation for lost wages. Admin. Record, p. 20.
The Grievance Review Board (hereinafter GRB) held a hearing on February 11, 2009, where the Board granted Summary Judgment to the Respondents. Ms. Fun-maker appealed, and the HCN Trial Court remanded the case to the GRB for a new hearing with full testimony. Funmaker v. Dept. of Treasury, CV 09-17 (HCN Tr. Ct., Nov 24, 2009). The GRB held that hearing on January 20, 2010, and issued a decision in favor of Respondents on January 27, 2010. Funmaker, CV 09-17 (GRB Jan. 27, 2010). Ms. Funmaker appealed to the Trial Court, which upheld the GRB’s decision on April 11, 2011. Funmaker, CV 10-12 (HCN Tr. Ct. April 11, 2011). Ms. Funmaker then appealed to this Court to review the Trial Court’s decision.
Questions Presented
I. Did the Appellant receive due process?
II. Did the Trial Court abuse its discretion by affirming the GRB’s decision to admit a Performance Review and Performance Improvement Plan?
III. Did the Trial Court abuse its discretion by affirming the GRB determination that a three-day suspension was reasonable?
IV. Did the Trial Court abuse its discretion by affirming the GRB determination that Appellant had the proper training and experience to be held responsible for the task at issue?
V. Is it an appropriate remedy for this Court to remand to the Personnel Department?
Discussion
I. Did the Appellant receive due process?
Appellant Funmaker challenges the GRB’s finding that there was no due process violation and the Trial Court’s affirmation of this finding. The Employment Relations Act (hereinafter ERA) mandates that “[sjupervisors imposing discipline shall afford Due Process to the employee prior to suspending or terminating any employee.” ERA § 31(a). As this Court has stated, there are “two distinct components of due process: notice and an opportunity to be heard.” Kelty v. Pettibone, SU 99-02 (HCN S.Ct., July 27, 1999) at 2-3. Appellant Funmaker concedes that she was provided with an opportunity to be heard. Brief for Appellant at 14, Funmaker v. Dept. of Treasury, SU 11-05 (HCN S.Ct., Oct. 10, 2011). (“The Grievance Review Board is correct in stating that the evidence at the second Grievance Review Board Hearing supports a conclusion that Kyle M. Funmaker was given a(sic) opportunity to be heard”). Therefore, the only issue for this Court is whether her pre-deprivation conversation with Appellees Young and Meinking satisfied the requirement of notice.
This Court must therefore turn to what “notice” entails and what actions are sufficient to satisfy the requirement. Although Ho-Chunk law is independent of federal law and is not bound to federal court decisions, much of Ho-Chunk law is derived from concepts central to federal law. The Ho-Chunk Judiciary serves a sovereign nation and pursues its own application of these concepts to suit the needs of the Ho-Chunk people. Nevertheless, federal court precedent can serve as a legal basis in HCN judicial decisions when the basic tenants of a legal concept are under debate. It is reasonable to expect that, when the HCN Legislature incorpo *424 rated these federal concepts, such as due process, they were looking to the federal law as a roadmap. The laws’ purpose and meaning should therefore be essentially the same. In the current instance, federal precedent can help HCN courts to clarify what defines “notice,” which would then be applied to uniquely Ho-Chunk circumstances. This Court, therefore, looks to federal law to clarify what is meant by “notice.”
Appellant argues that notice requires the defendant to have advance knowledge of any pre-deprivation hearing. Past federal case law does not support this interpretation. Courts have construed notice as a defendant’s right to notice of what they are being accused of, so that they may fully present their arguments, relate their side of the story, and counteract any findings that may be incorrect. In order to defend herself, the defendant must know why she is being deprived of her property. Only with this knowledge can the defendant have the required “meaningful opportunity to be heard” on the precise issues in question. Lonetree v. Hoist, CV 97-127 (HCN TV. Ct., Sept. 24, 2008) at 10 (citing Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)), aff'd, SU 98-07 (HCN S.Ct., Apr. 29, 1999). The U.S. Supreme Court has supported this interpretation, holding, “An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); Grannis v. Ordean 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914); Priest v. Board of Trustees of Town of Las Vegas 232 U.S. 604, 34 S.Ct. 443, 58 L.Ed. 751 (1914); Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520 (1900).
In Hamdi v. Rumsfeld, 542 U.S. 507, 530, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004), the U.S. Supreme Court held, “Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.” (quoting Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252, (1978)). To ensure this protection, citizen-detainee Hamdi was “entitled at a minimum to notice of the Government’s claimed factual basis for holding him, and to a fair chance to rebut it before a neutral decisionmaker.” Id. at 553, 124 S.Ct. 2633 (emphasis added). The U.S. Supreme Court has repeatedly described “notice” as “notice of the case against him and opportunity to meet it.” Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This, the Court said, is the “essence of due process.” Id. See also Armstrong, 380 U.S. 545, 550, 85 S.Ct. 1187 (1965) (“An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”); Cleveland, Bd. Of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (“The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.”); City of West Covina v. Perkins, 525 U.S. 234, 240, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999), quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). (“Th[e] right to be heard has little reality or worth unless one is informed that the matter [affecting one’s property rights] is pending and can *425 choose for himself whether to appear or default, acquiesce or contest”).
The pre-deprivation meeting with Fun-maker satisfied notice as defined by the federal courts. Appellant was notified that she was being disciplined for the “Christmas check” incident and was therefore given the opportunity to explain why her task was not completed. Admin. Record p. 38. Even after the meeting concluded, she had sufficient notice of the discipline and its cause to present her arguments to her Supervisor in more detail, should she so desire.
In addition, due process need not always satisfy the strict level of stringency required in a judicial hearing. As the Trial Court noted, a pre-deprivation hearing “does not need to resemble a proceeding that one would encounter in civil litigation.” Lonetree v. Garvin, CV 06-74 (HCN S.Ct., Mar. 9, 2007) at 16 (citing Nowak v. City of Calumet City, No. 86 C 1859, 1987 WL 10298 (N.D.Ill.1987)). Instead, it “need only include oral or written notice of the charges, an explanation of the employer’s evidence, and an opportunity for the employee to tell his [or her] side of the story.” Id. (quoting Gilbert v. Homar, 520 U.S. 924, 929, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997)). The Supervisor’s pre-deprivation hearing met these standards and therefore satisfied the due process requirement.
II. Did the Trial Court abuse its discretion by affirming the GRB’s decision to admit a Performance Review and Performance Improvement Plan?
The Trial Court refrained from ruling on the admission of the Performance Review (also referred to as “Performance Evaluation”) and Performance Improvement Plan (hereinafter PIP), stating that it was unnecessary because “the GRB ultimately declined to rely on the information to assess whether progressive discipline was utilized.” Funmaker, CV 10-12, n. 15 at 18. This Court disagrees with the Trial Court that the issue of the admittance of the Performance Review and PIP can be ignored simply because the GRB’s final opinion did not rest on that evidence.
The GRB referred to the documents in its decision, even if these documents were not the deciding factor in their conclusion. The Board stated:
“Prior to her suspension, the Grievant had been provided notification of deficiencies in her workmanship through her Performance Review and PIPs. The non-disciplinary means, at which supervisors elected to pursue prior to November 3, 2008, at very (sic) least, identifies performance issues and gives her (Grievant) the opportunity to improve in those areas. Claiming that progressive discipline was not adhered to, is alone an allegation to which the Board must review the evidence in support in order to substantiate the claim as fact.”
Funmaker, CV 09-17 (GRB, Jan. 27, 2010) at 8.
Furthermore, it is clear from Appellees’ brief that the matter has not been laid to rest and that the documents are still being used as evidence. Even after the Trial Court’s statement that the Performance Review and PIP played no significant role; the Appellees devoted a portion of their brief to expounding upon them and used them to show Appellant Funmaker’s history of substandard performance. Brief for Appellee at 14, Funmaker v. Dept. of Treasury, SU 11-05 (HCN S.Ct., Oct. 10, 2011). (“The GRB would be ‘flying blind’ or operating in a vacuum, potentially reviewing terminations without the ability to take into consideration past job performance as shown through performance evaluations or *426 performance improvement plans ...). The PIP was also a factor in Appellant’s suspension, since the DOP cited it in their Disciplinary Action Form. They noted Appellant’s “[r]efusal or inability to improve job performance in accordance with written or verbal direction after a reasonable trial period ...” Id. at 6.
The improper admittance of evidence cannot usually be waived off with the argument that it did not result in any “significant harm.” It is impossible to say how this improper evidence colored the opinion of the decision makers and influenced their credibility assessments, even if they attempt to exclude this evidence from their decision making. Therefore, this Court must review whether the admittance of the Performance Review and PIP was proper.
This Court finds no reason why the Performance Review and PIP should not be admitted as evidence. The ERA holds that the GRB is charged with making any determinations regarding the relevancy of evidence and whether to admit it. The GRB makes its decision based on “whether the proposed evidence ... relates to the disciplinary action or whether it will affect the Board’s recommendation.” ERA § 34(g)(5). The finding that the Performance Review and PIP are relevant is not unreasonable, and should therefore not be struck down by the Trial Court as arbitrary and capricious. While this Court agrees with Appellants that the documents are not disciplinary “and should not be considered in context (sic) of progressive discipline” Brief for Appellant, Funmaker v. Dept. of Treasury, SU 11-05 (HCN S.Ct., Oct. 10, 2011) at 8, they are relevant as evidence that Appellant Funmaker’s performance was questionable. Her previous record of inadequate job performance may serve as an indicator that failed to issue the check not due to any lack of training in the area, but rather due to her poor discipline. This is sufficient justification for the GRB’s decision to admit the evidence.
This Court disagrees with Appellant’s argument that the ERA states that Performance Reviews and PIPs cannot be admitted as evidence in GRB hearings. The ERA reads, “Performance Evaluations may not be grieved, and may not be reviewed under administrative review process or judicially.” ERA § 33(c). Certainly the first prong of this rule is not violated, since the Performance Evaluation itself was not being grieved. The second prong of this test, however, leaves room for interpretation. This Court must therefore look not only to the words themselves, but also to the context in which they were written in order to ascertain the legislature’s original intent in drafting this rule.
ERA § 33(c) appears under a subsection of the statute entitled “Grievances,” which outlines the legal bases for which an employee may bring a grievance action. This subsection is clearly intended to limit employees’ ability to bring grievances. It is not a procedural guideline for the grievance process itself, nor is it intended as a limitation on the GRB. This Court therefore finds that the rule the Appellant cites is not meant to restrict the GRB’s admittance of Performance Reviews and PIPs. It is only meant to restrict grievances. Given the fact that the ERA does not discuss any limitation on the GRB. the Performance Review and PIP were properly admitted under the GRB’s own discretion.
III. Did the Trial Court abuse its discretion by affirming the GRB determination that a three-day suspension was reasonable?
Under the system set up by the ERA, the GRB is the body responsible for *427 gathering evidence from documents and witness testimony and then making determinations based on that evidence. The courts, upon reviewing GRB decisions, do not make their own findings of fact, but rather weigh the evidence against the GRB’s decision in order to determine whether the GRB’s conclusion is arbitrary and capricious. The Trial Court “shall not set aside or modify any agency decision, unless it finds that the decision was arbitrary and capricious, unsupported by substantial evidence or contrary to law ...” HCN R.Civ. P. 63(1). This system is effective because it places the factual and credibility determinations in the hands of the GRB—the body that hears the evidence first-hand and has particular expertise in employment cases.
This Court has affirmed the logic of this system, stating, “When reviewing administrative decisions, the Trial Court plays the role of an appellate court and is not charged with finding facts. The GRB, with its greater expertise and familiarity, is the appropriate body to find facts.” Funmaker, SU 07-05 at 9. The Trial Court should instead determine whether there is an “established ... scheme of ‘reasoned decision making’ ” in the agency’s analysis. Allentown Mack Sales and Service, Inc. v. N.L.R.B., 522 U.S. 359, 874, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998) (quoting Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). The Trial Court must also decide whether the agency has made “reasonable determinations based on substantial evidence.” Debra Knudson v. Ho-Chunk Nation Treasury Dep’t, SU 98-01 (HCN S.Ct., Dec. 1, 1998, citations omitted) at 8. The Trial Court analyzes the relationship of the facts to the decision. It does not establish its own facts.
The GRB’s decision that the three-day suspension was reasonable is a factual and credibility determination and should therefore only be overturned if it is unsupported by the evidence. The GRB cited the ERA as a basis for this discipline. ERA § 30(e)(4) holds as impermissible an employee’s “[r]efusal to accept reasonable and proper assignments or failure to carry out a direct Order from a superior, except where the Order is illegal or the employee’s safety may reasonably be jeopardized by the Order.” The GRB found that Ms. Funmaker failed to comply with this law, to the dissatisfaction of the affected tribal member, and that a three-day suspension was warranted. Funmaker, CV 09-17 (GRB, Jan. 27, 2010) at 7. There is no law or evidence suggesting that it was not or that the GRB’s conclusion was unreasonable.
The GRB also made a reasonable determination on the question of whether the three-day suspension violated the idea of progressive discipline and, if so, whether this violation would render the suspension invalid. Appellant argues that the Performance Review and PIP cannot be used as a basis for stating that the discipline was progressive. This Court agrees since Appellant’s discipline pertains to a particular incident separate from any previous performance evaluation. In addition, the Performance Review and PIP are not disciplinary measures. However, the fact that the Performance Review and PIP do not qualify as prior discipline does not meant that the DOP’s decision to suspend Appellant Funmaker was unreasonable or failed to satisfy the requirements of the ERA. The rule states:
“Depending on the nature of the circumstances of an incident, discipline will normally be progressive and should bear a reasonable relationship to the violation. Based on the severity of the em *428 ployee conduct, progressive discipline may not be applicable ...”
ERA § 31(a).
The ERA does not set forth a rigid standard for what constitutes progressive discipline. The GRB argues that the three-day suspension was a reasonable starting point for discipline, and there is no indication from the HCN Legislature that this is an unlawful interpretation. Given the lack of evidence that the discipline was unreasonable, the GRB properly deferred to the DOFs authority. In addition, the ERA does not strictly require discipline to be progressive. Under certain circumstances, employee conduct may necessitate harsher discipline. There is, again, no set standard outlining when discipline should be progressive. Until the DOP promulgates guidelines on this question, the law shall be loosely interpreted, as the Legislature clearly intended.
IV. Did the Trial Court abuse its discretion by affirming the GRB determination that Appellant had the proper training and experience to be held responsible for the task at issue?
Appellant’s argument that she did not have the proper training or experience should be left for the GRB to decide. The Board heard all the relevant evidence and .made a decision that was supported by that evidence. The Trial Court was therefore correct to uphold it. This conclusion is a finding of fact, based on evidence and credibility determinations. As discussed above, the GRB is the appropriate body to make findings of fact and credibility determinations. The Trial Court and Supreme Court may overturn the decision if the evidence does not support the conclusion. However, in this instance, this Court finds that the GRB properly established enough evidence to justify its decision that Appellant did have the proper training and experience.
V. Is it an appropriate remedy for this Court to remand to the Personnel Department?
There is no legal basis for Appellant’s argument that the case should have been sent to the DOP, not the GRB, after the GRB erroneously granted summary judgment to the Respondents. The DOP has no expertise in judicial proceedings and therefore has no part in the process after its initial investigation of a disciplinary action. The ERA’s only reference to the DOP and administrative review states, “The Department of Personnel will take all reasonable steps to investigate any incident, which has resulted in disciplinary action.” ERA § 34(a)(1). The rest of the process, once the discipline is grieved, falls to the GRB and the courts.
The GRB and other agencies sometimes err in their legal judgments. That is why the HCN Constitution established a Trial Court. The Trial Court, with its greater knowledge of HCN law, reviews contested GRB decisions in order to determine whether they should be upheld. If they are flawed, the Trial Court may remand to the GRB with the instructions and guidance to allow them to conduct a proper proceeding and arrive at a satisfactory decision.
The GRB’s error is no reason to strike the suspension from Appellee’s record. If it were, the Trial Court would always be faced with the choice of upholding the GRB decision or automatically ruling in favor of the Petitioner. This is not the way Ho-Chunk law operates. Ho-Chunk law is based on reasoned judicial analysis by experienced bodies who render the decision they think is best. They are not compelled to arrive at a certain outcome *429 simply because a lower adjudicative body acted erroneously.
Allowing the DOP to strike down every suspension for which the GRB mistakenly granted summary judgment would lead to ridiculous outcomes. The Petitioners, for example, would have every reason to push for summary judgment against them so that they would have the opportunity to have their discipline expunged by the Trial Court. The GRB would be afraid to ever render summary judgment for fear that it would result in an unintended favorable outcome for the Petitioner, and Respondents would refrain from pursuing summary judgment out of the same fear. Appellant’s proposition also has the potential to radically disrupt the Ho-Chunk judicial system, which is based upon appellate proceedings. Were every overturned agency or lower-court decision to lead to an automatic victory for the Petitioner, this appellate system would cease to exist. The Trial Court is the appropriate body to adjudicate appeals from the GRB. The DOP has no expertise in judicial decisions and is therefore not part of the judicial process once the case is sent to the GRB.
Conclusion
For the foregoing reasons, this Court finds in favor of the Appellee on all points and upholds Appellant’s three-day suspension.
EGI HESKEKJET.
Associate Justice DENNIS M. FUNMAKER dissented from this Decision.

. The Appellants filed an Objection to Appellate Judge (sic) and Request for Substitution of Appellate Justice on July 11, 2011. Justice Funmaker did not file a Denial Order and remained on the case. The Appellant did not raise the issue at oral argument and Justice Funmaker remained on the case.